MISSOURI, K. & T. RY. CO. OF TEXAS v. SCONCE. (No. 8175.)

(Court of Civil Appeals of Texas. Ft. Worth. April 24, 1915.)

1. RAILROADS ⬤⟞282—OPERATION—INJURIES.
    In an action for injuries caused by cotton seed cakes falling upon plaintiff in loading a car when another car was coupled to it, evidence *held* insufficient to show that defendant's employés knew that plaintiff was in the car.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. ⬤⟞282.]

2. RAILROADS ⬤⟞282—OPERATION—INJURIES—CONTRIBUTORY NEGLIGENCE.
    In an action for injuries caused by cotton seed cakes falling upon plaintiff while loading them into a car, whether plaintiff was guilty of contributory negligence in being in the car when another car was being coupled to it *held* for the jury.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. ⬤⟞282.]

Appeal from District Court, Denton County; C. F. Spencer, Judge.

Action by Claude E. Sconce, by next friend, against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Charles C. Huff, of Dallas, and Garnett & Garnett, of Gainesville, for appellant. Owsley & Owsley, of Denton, for appellee.

BUCK, J. This suit was brought by appellee, who, being a minor, sued by his father as next friend, to recover damages on account of personal injuries sustained by a car door and some cotton seed cake falling on him, while he was engaged in helping to load a car at the oil mill at Denton, Tex. Plaintiff was in the employ of said oil mill and was one of some four or five young men working under the direction of a foreman engaged in loading a car with cotton seed cake. The car was partially loaded when the superintendent was notified by the railroad company that it was about to place another car on the side track, where this car in the process of being loaded was located, and to get ready for it. The superintendent had the young men to put a car door in up-

right position at each end of the stack of cake, and to brace these uprights with another car door, which was nailed or tacked to the floor. The foreman then told all of the employés to get out of the car, which they did. While the incoming car was approaching, several of the young men were told by the foreman to get back in the car and to support these braces, so that the impact of the collision would not knock them down and cause the stack of cake to fall. They did so, and when the coupling was made the doors and the seed were caused to fall, and the door as well as the seed fell upon plaintiff, at least upon his feet and legs, and he was injured. It was alleged by plaintiff that his injuries were caused by reason of the negligence of defendant in running the car against the one in which plaintiff was with great force and violence, knowing that plaintiff was in said car, and without notice to him that the incoming car would be run against said standing car.

From a verdict and judgment for $1,050 with interest, the defendant appeals.

While the plaintiff alleged that the defendant company and its agents failed to notify him that it was going to back its train and car into the car where plaintiff was at work, yet the evidence disclosed that prior to the backing in of said train, that the superintendent of the oil mill, who was in charge of the force loading the car in question, had been notified by an employé of the railway company some time before that the cars were coming in on the side track, and that he asked such employé to give him time to prepare the car, and he had ample time to prepare the car, and he did so prepare it, putting up these supports as heretofore described at each end of the stack of cake, and that he notified the railway employés that he was ready, and that while the incoming train was some short distance from the standing car the superintendent told these young men to get back into the car. Hence, the court submitted only the question of whether or not the defendant company, in operating the switch engine and cars against the standing car, propelled the same with unusual force and violence, and caused an unusual jar or jolt to the standing car, and whether or not in doing so such employés were guilty of negligence.

The testimony of plaintiff shows that when he got in the car the second time he knew that the switch engine pushing cars ahead of it was approaching the standing car. His testimony upon this point is as follows:

"We saw the cars coming at the time we went in there to hold the cake up. Yes; when we saw the car coming towards that car we all got back into the car where the cake was. I don't know how far off the car was when we saw it coming. I guess it was about as far off as from here across this room (indicating about 45 feet) or further. I don't know just how many yards it was; I never noticed. It might have been as far as across this room; I don't know whether it was further or not. Yes; the car was coming towards the car that the cake was in at the time I noticed it. I never noticed whether it was coming pretty fast or not. I don't remember whether it was at the end of a train and being pushed down or not. Yes; it was coming down the track, and when it was about 40 or 50 or 60 feet away, we all got into the car to hold the cake. It isn't a fact that the car was coming so fast that we all knew it would knock that cake down when it struck the car, and we got in there to hold the cake. We didn't know that it would knock the cake down; we thought maybe it would. The reason we got in there, that fellow gave us instructions to get in there—the boss man. We were in there just a little while until the car struck the one we were in. It didn't strike just as soon as we got in there and got against the door; we had stood there for a little while. It is not a fact that we had not gotten ourselves well placed there and got fixed until the car struck; we had been there long enough to get ourselves placed and stood there a few minutes—a little while. I said I didn't notice how fast the car was coming. I don't know that it was coming tolerably fast; I never noticed. Yes; I saw the car. I didn't notice how fast it was coming."

Thus, it will be seen that so far as the plaintiff himself was concerned, he got in the car with the full knowledge of the near approach of the car that was being pushed in. It is further shown by the testimony of H. A. Porter, the superintendent, that ample time was given him in which to prepare the partially loaded car for the shock of the impact. Nor is there any evidence, so far as we have been able to find, that the employés of the railroad company knew, when they pushed the car on to this side track and against the standing car, that any of the oil company's employés were in said partially loaded car. C. G. Houser, brakeman, testified as follows:

"The engine was on the south end of those cars and we were shoving them north. Before we shoved them in there I went to that car that was being loaded with cotton seed cake. There were some parties in that car at the time. I went to the side of the car where the men were working inside of the car and told them that we were coming in to switch the mill and to get out of the car. They got out of the car. After that I went south and got up on top of the cars that we were shoving in there. Yes, I went down then to bring the cars in. The men got out of the car and the last I saw of them they were sweeping the scales. When I went up to bring those cars in, I did not know whether they had gotten back into the car or not. When I was on the top, just before the cars came in, I saw the brakeman give the slow signal for the engineer to slow up. After I notified the men, I suppose I went something like 100 feet south of the scales and got on top of the cars. When I got up on top of the cars and the cars were moving against that car, I did not know whether these men had gotten back into the car again or not; I thought there was no one in the car at all."

The only evidence, as it seems to us, upon which could be predicated a finding of the jury that the defendant company had knowledge that the plaintiff and other employés of the oil company were in the loaded car at the time its switch engine backed other cars into it, is the testimony of Mr. Porter, the superintendent, as follows:

"I couldn't tell whether the railroad employés knew those boys were in the car or not, but at the mills where I have been it has always been done; for the last 10 years I have been doing

the same thing, placing the men in the cars to hold the cake, but whether these men, or the other railroad men, knew that the men were in there, I couldn't say, and don't know on this occasion whether they knew these men were in there, but I am practically certain that 90 per cent. of them do—it was the custom of doing that."

[1] It will be seen that even though it might reasonably be held that such testimony raises the presumption of knowledge on the part of the switching crew that it was customary for those engaged in loading cars with oil mill products, to stay in the car when the coupling was made, yet in this case an employé of the railroad company had come down to the car and notified the employés of the oil mill company that switching was to be done, to get out of the car, and they did get out, and, so far as the record discloses, the last time they were seen by any employé of the railroad company, they were on the outside of the car. We feel under the conditions of this record that there is not sufficient evidence to sustain the allegation of negligence on the part of defendant's employés, and that appellant's fifth assignment of error, in which it urges error to the action of the trial court in failing to grant a new trial on the eighth ground set up in its motion, should be sustained. Such ground is as follows:

"The verdict of the jury is contrary to the law and evidence in this: The evidence shows without conflict that plaintiff, Claude E. Sconce, upon the occasion of his alleged injury, was notified and warned by defendant's brakeman, and had actual notice, that other cars were about to be run into and against the car in question; that after receiving this notice and having this knowledge, and when said other cars were being backed in and were running toward the car in question, and were within 50 feet of the same and still running, plaintiff, without the knowledge of defendant, or any of its employés in charge of said incoming cars, re-entered said car when it was about to be struck, and when the impact came he was hurt and injured, if at all—these facts being established by the evidence, the jury erred in not rendering their verdict in favor of defendant."

[2] Since this case will have to be reversed for the reasons indicated, it will not be necessary for us to discuss or pass upon appellant's other assignments, but in passing it may be well to suggest that we do not feel that the trial court erred, as contended in appellant's second assignment, in refusing to give a peremptory instruction for defendant on the ground that the evidence showed, without conflict, that plaintiff was guilty of contributory negligence in re-entering the car at the time he did. Taking into consideration the fact that he had been working in this employment only a few hours, and his youth and inexperience, we believe that the question of contributory negligence vel non was one of fact for the jury and not of law. And in sustaining appellant's fifth assignment, we do so because of an utter absence in the record of evidence to show that appellant's employés in charge of said switch engine and train had any knowledge of the presence of the plaintiff in said car at the time of said impact, or that they had any knowledge of such facts as would have put a reasonable person on notice of his presence or probable presence in said car.

For the reasons given the judgment is reversed and the cause remanded.