## STANLEY PALMER, Appellant, v. BANK OF STURGEON.

### In Banc, February 16, 1920.

1. **SUIT IN ANOTHER STATE**: Attachment: Notice by Publication: Main and Ancillary Issues: Jurisdiction. A Tennessee grain dealer deposited money in a Missouri bank to guarantee a Missouri farmer that his drafts for corn shipped to the grain dealer would be paid. The farmer shipped a carload of corn and took the bill of lading to the bank, and was for the first time informed that the grain dealer had drawn out the guaranty fund. Expressing dissatisfaction, he drew his draft on the grain dealer, which was dishonored by the drawee and returned to the bank. The farmer threatened to sue the bank for surrendering his security without notice, and to settle the matter the bank purchased the corn, placing the amount of the draft to the farmer's credit, receiving its title by an assignment of the bill of lading, and sent it to a Tennessee factor, who sold the corn for the bank, receiving the money therefor. The grain dealer, claiming that he had sustained damages in a large sum on account of the poor quality of four previous carloads of corn purchased from the farmer, brought suit in Tennessee, by garnishment, against the farmer, the bank and the factor, giving notice to the farmer and bank by publication. The bank entered its general appearance, and the factor paid the money into court, to be disposed of according to its decree. Notwithstanding the farmer made no appearance, the court found he was indebted to the grain dealer in a large sum, and adjudged that the grain dealer was entitled to the fund deposited in court by the factor. Thereupon the farmer sued the bank in a Missouri court for the amount of the draft deposited to his credit when the bill of lading was assigned to the bank. *Held*, that the judgment of the Tennessee court impounding the fund was only ancillary to the principal issue, whether the farmer was indebted to the grain dealer, and as he had no property in Tennessee the validity of that judgment depends upon whether the Tennessee court acquired jurisdiction to render a judgment against him on the principal issue.

2. ———: ———: **Appearance: Waiver: Constitutional Question.** Since the defendant bank appeared generally in the Tennessee court, did not object to the jurisdiction of the court over the principal defendant in the attachment proceeding, did not assert the uncon-

stitutionality of the Tennessee statute which authorized constructive service upon both, and, without any appearance whatever by the non-resident principal defendant, went to trial on the merits of the case, and was defeated, it will not now be permitted to deny the validity of the Tennessee judgment awarding a fund belonging to it to the plaintiff in that case as a creditor of the principal defendant therein; but in a suit by said principal defendant against said bank, in a Missouri court, to recover money placed to his credit in the bank, the question whether the adjudication by the Tennessee court that the plaintiff was indebted to the plaintiff in that attachment suit is binding upon the plaintiff in this, or was void for lack of jurisdiction, is for determination.

3. ———: ———: Jurisdiction. No judgment of a state court can have any validity unless supported by a personal notice to the defendant, served within the state, or by his voluntary appearance and submission to the jurisdiction, except in so far as it may be directed against property actually in the state and therefore subject to its jurisdiction.

4. ———: ———: ———: In Rem. If the plaintiff at the time the garnishment judgment rendered against him and the defendant bank by the court of Tennessee had never been within that state, did not enter his appearance, and the money, of which it is claimed the Tennessee court acquired its jurisdiction *in rem*, was deposited in the defendant bank in Missouri, payable to plaintiff upon demand, he was not bound by the judgment of the Tennessee court impounding the money for the use of his Tennessee creditor; for that court, neither by statute nor otherwise, could acquire jurisdiction over him or the *res*.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*Major J. Lilly* and *McBaine, Clark & Rollins* for appellant.

(1) The judgment of the Tennessee court may be attacked in this proceeding by Palmer if that court had no jurisdiction as to him. Smith v. McCuthen, 38 Mo. 416; Latimer v. Railroad Co., 43 Mo. 105; Pennoyer v. Neff, 95 U. S. 714; Marx v. Fore, 51 Mo. 69; Eager v. Stover, 59 Mo. 87; Barlow v. Steele, 65 Mo. 611;

Bradley v. Welsh, 100 Mo. 268; Wilson v. Railroad Co., 108 Mo. 589; Forsyth v. Barnes, 228 Ill. 326, 10 Am. & Eng. Ann. Cases, 710; National Exchange Bank v. Wiley, 195 U. S. 257; Levin v. Gladstein, 142 N. C. 482, 55 S. E. 371, 32 L. R. A. (N. S.) 905. (2) The judgment was absolutely void as to Palmer. He was neither (a) personally served in Tennessee; (b) nor did he have any property in Tennessee; (3) nor did any one who could be reached by personal service in Tennessee, owe him any money. Flexner v. Faison, 248 U. S. 289; Knox Brothers v. E. W. Wagner & Co., 209 S. W. (Tenn.) 638; Pennoyer v. Neff, 95 U. S. 714; Crim v. Crim, 162 Mo. 544; Insurance Co. v. Walden, 238 Mo. 49; New York Life Ins. Co. v. Dunlevy, 241 U. S. 518, 60 L. Ed. 1140; Shinn, Attachment and Garnishment, sec. 674; Wilson v. Railroad, 108 Mo. 589; Harris v. Balk, 198 U. S. 215; Douglass v. Phoenix Co., 138 N. Y. 209, 20 L. R. A. 118, 34 Am. St. 449; Lovejoy v. Albee, 33 Me. 414, 54 Am. Dec. 630; L. N. Ry. Co. v. Deer, 200 U. S. 176, 50 L. Ed. 426. (3) The Bank of Sturgeon, a Missouri corporation, was not subject to personal service in Tennessee. Goldie v. Morning News, 156 U. S. 518, 39 L. Ed. 517; Kendal v. American Automatic Loom Co., 198 U. S. 477; Printer v. Colorado Springs Ry. Co., 127 Mo. App. 248; Cabanne v. Graf, 87 Mo. 510. (4) The Tennessee court decided that the $440 was due from Klyce to the Bank of Sturgeon. The Tennessee court was then powerless to effect Palmer as the limit of its power was to reach a debt of a non-resident due from a resident of Tennessee, who was personally served with process. Jurisdiction over Klyce gave the Tennessee court the right only to condemn debts due from Klyce, to a non-resident. Jurisdiction over Klyce could not give the Tennessee court the right to reach a debt that a non-resident owed a second non-resident to whom Klyce was indebted. Harris v. Balk, 198 U. S. 216, 49 L. Ed. 1023; Wilson v. Railroad Co., 108 Mo. 589; Norvell v. Porter, 62 Mo. 309; New York Life Ins. Co. v. Dunlevy, 241 U. S. 518, 60 L. Ed. 1140; Douglass v. Phoenix Co., 138

N. Y. 209, 20 L. R. A. 118, 34 Am. St. 449. (5) Stanley
Palmer is not bound by the decision of the Tennessee
court impounding the $440 which that court found Klyce
owed the Bank of Sturgeon as the Tennessee court had
no jurisdiction over him, and so the Bank of Sturgeon,
when it paid the $440 lost its own  money  due it from
Klyce, and did not have taken away from it a debt which
it owed Stanley Palmer. New York Life Ins. Co. v. Dun-
levy, 241 U. S. 518, 36 Sup. Ct. Rep. 613, 60 Law. Ed.
1140; 30 Harvard Law Review, 86; Ruff v. Ruff, 85 Pa.
St. 333; Poffer v. Graves, 26 N. H. 256; 2 Shinn Attach-
ment, section 725.

   *Don C. Carter* for respondent.

   (1)  The judgment of the Tennessee court impound-
ing, by writ of attachment, the $440 found within the
jurisdiction of the court, and condemning the debt due
from Bank of Sturgeon to plaintiff (Palmer) to the ex-
tent of $440 only, is valid and regular under the Tenn-
essee statutes, and entitled to full faith and credit in this
State.   Attachment, 6 Corpus Juris, pp. 30, 33, 35, 37;
Barnhart v. Dollarhide, 186 S. W. 1. c. 565; Cochrane
v. Bank, 201 S. W. 575; Rothschild v. Knight, 184 U.
S. 341; Norman v. Insurance Co., 237 Mo. 582; Garn-
ishment, 20 Cyc. 978, 980, 1018, 1050; Chi. R. I. & P. R.
Co. v. Sturm, 174 U. S. 710; B. & O. R. Co. v. Allen, 3
L. R. A. (N. S.) 608; Steer v. Dow, 20 L. R. A. (N. S.)
263; Harris v. Balk, 198 U. S. 215; B. & O. R. Co. v.
Hostetter, 240 U. S. 624; N. Y. Life Ins. Co. v. Dun-
levy, 241 U. S. 521; Pennington v. Fourth Natl. Bank
243 U. S. 271. The proceedings had in the Tennessee
court, impounding the $440 by attachment, and condemn-
ing the debt defendant bank owed plaintiff Palmer, to
the extent of $440 only, was not in violation of Section 1
of the Fourteenth Amendment to the Constitution of the
United States, as depriving plaintiff of his property
without due process of law. Plaintiff Palmer had due
process of law. Pennington v. Fourth Natl. Bank, 243
U. S. 271; Cases cited supra.

BROWN, C. —This suit was instituted in the Court of Common Pleas of Boone County on September 2, 1916, to recover the sum of $428.63, the balance which plaintiff alleges in the petition to have been on deposit to his credit in the defendant bank on the —— day of August, 1916, which he then demanded, and payment of which was refused.

The answer admits that prior to that date the plaintiff had deposited the amount named in defendant's bank to be paid to him on demand, that on the date mentioned plaintiff demanded the same and that defendant refused payment thereof. The answer further alleges that the defendant was, at the date of said demand, and still is, entitled in equity to hold the said sum of money by reason of the following facts:

"That on or about the twenty-third day of March, 1915, plaintiff shipped to one G. T. Taylor, doing business as the Taylor Grain Company, of Memphis Tennessee, a car of ear corn, billed from Larrabee, Missouri, in Audrian County, to Paris, Texas; via the Chicago & Alto Railroad, and drew a draft on said Taylor Grain Company, with bill of lading and invoice attached, for $485.60, through the defendant Bank of Sturgeon and through the Union & Planters Bank & Trust Company of Memphis, Tennessee; said draft was dishonored by the said Taylor Grain Company at Memphis, Tennessee, and returned to the Bank of Sturgeon, for said plaintiff, by the Union & Planters Bank & Trust Company.

"Prior to the above shipment of corn, the plaintiff had sold and shipped some eight or nine cars of corn to the said Taylor Grain Company of Memphis, Tennessee, and had an arrangement with said company, whereby said company deposited with the Bank of Sturgeon the sum of five hundred dollars, to guarantee plaintiff that it would honor and pay all drafts drawn by plaintiff on said Taylor Grain Company, for cars of corn shipped to it by plaintiff. Some time prior to the shipment of said last car of corn, and on or about the seventeenth day of March, 1915, the Taylor Grain Company

drew a draft on the defendant Bank of Sturgeon for said
$500 deposit, and defendant paid same, presuming that
the business relations between plaintiff and the Taylor
Grain Company had ended, as it had been some time since
plaintiff had shipped the Taylor Grain Company any
corn; and defendant further states that at the time
plaintiff drew said $485.60 draft on said Taylor Grain
Company, it informed plaintiff that it had paid out said
$500 to said company on its draft, some few days before.

"Just as soon as the draft for $485.60 as above men-
tioned was returned to Palmer through the defendant
Bank of Sturgeon, plaintiff made complaint to defendant
for having paid said $500 out, without first having noti-
fied him, and demanded of defendant that it take up said
bill of lading and pay him the amount thereof, and
threatened to sue defendant bank for said $485.60, if the
bank did not pay him the same. Therefore, the defend-
ant bank, desiring rather to try and get out whole on
said car of corn, had plaintiff assign said bill of lading
and invoice of said car of corn over to it, which plaintiff
did on or about April 1, 1915, and on April 5, 1915, de-
fendant paid plaintiff the sum of $485.60 therefor.

"Defendant bank then forwarded said bill of lading
and invoice to one Henry A. Klyce, of Memphis, Tenn-
essee, doing business under the name of Henry A.
Klyce Company of Memphis, Tennessee, dealers in grain
and grain products and authorized him to sell and dis-
pose of said car of corn for it and for its account,
which said company, after quite a while, did, realizing
the sum of $440 therefor, losing a great deal on said
corn, by reason of its inferior quality."

The answer then proceeds to state, in substance,
that before the Klyce Company forwarded the $440 to
the defendant, the Taylor Grain Company instituted suit
by attachment against plaintiff in the chancery court of
Shelby County, Tennessee, for damages in the sum of
$908.83 for breach of warranty on other corn previously
sold by plaintiff to said Taylor Grain Company, to which
suit the defendant was made a party and was duly noti-

fied; that plaintiff was also notified by publication, but failed and refused to appear and defend same, by reason of which judgment was rendered against him for the amount demanded, and the said sum due from the Klyce Company to defendant was impounded and attached, by reason of which it was lost to defendant. The said sum of $440 was thereupon charged to plaintiff by defendant in his deposit account, leaving the same overdrawn in the amount of $11.37.

. . The plaintiff replied by general denial and also pleaded that the Tennessee statute under which the proceeding in the chancery court of Shelby County, Tennessee, was had, was void, in so far as it affected the rights of either plaintiff or defendant to the said sum of $440 due from the Klyce Company to the defendant, because it is in conflict with the provision of Section 1 of the Fourteenth Amendment to the Constitution of the United States "that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law."

The complaint in the Tennessee case was entitled G. T. Taylor, doing business as the Taylor Grain Company, complainant, v. Stanley Palmer, Bank of Sturgeon, Henry A. Klyce, defendants. The first paragraph alleged that the complainant was a citizen and resident of Shelby County, Tennessee; that the defendant Palmer was a non-resident of Tennessee and a resident of Boone County, Missouri; that the Bank of Sturgeon was a Missouri corporation having its place of business in Boone County, Missouri, and that H. A. Klyce was a resident of Shelby County, Tennessee, doing business under the name of the Henry A. Klyce Company.

The second paragraph stated that the defendant Stanley Palmer was indebted to the complainant in the sum of $908.83 for breach of a contract not connected with this suit. Paragraph three stated that the Bank of Sturgeon was indebted to Palmer as the depositor of

a large sum of money in said bank, which amount is not stated. Paragraph four stated that defendant Klyce had in his hands as proceeds of the sale of the car of corn here in question $440, which the plaintiff was advised and believed and charged was the property of Palmer, which the latter claimed to be the property of defendant bank. Paragraph five stated that the complainant was advised that if the said fund was the property of Stanley Palmer, he had the right to come into court and sue by attachment on account of the non-residence of the defendant, to have attachment issue and levied by garnishment upon the fund in the hands of Klyce as the property of Palmer, and if the property was transferred and belonged to the bank he had the right, under Section 5219 of Shannon's Code, to prosecute an attachment bill in the Tennessee court and attach said fund as the property of the defendant bank, and require it, as garnishee, to answer and bring into court whatever amount it owes the defendant, Stanley Palmer, not exceeding, of course, the amount attached in that State in the hands of Henry A. Klyce. Complainant also in this paragraph alleged his right to file his bill in a "double aspect" as the facts are developed on account of the complications set forth, and was without remedy save in that Honorable Court. The sixth paragraph of the complainant charged that "the transfer on the part of defendant Palmer to defendant bank, if any, was made, was conceived in fraud, covin, collusion and guile, and made for the purpose and with the intent of hindering, delaying and defeating the complainant in the enforcement of the collection of his just demand, and that the said transfer is, therefore, fraudulent. However this may be, and whether the fund here belongs to defendant Palmer or defendant bank, he has the right to file this bill and reach the said fund under the facts above set forth." The prayer to the complaint was as follows:

"That the defendants named in the caption may be made defendants to this bill; the defendant Klyce by

process, and the two non-resident defendants by attachment and publication, pursuant to the statute. That an attachment be issued to be levied upon the fund in the hands of Henry A. Klyce, both as the property of defendant Stanley Palmer and as the property of the defendant Bank of Sturgeon. That the defendant Henry A. Klyce be required to answer fully and specifically as to the amount due and the condition and circumstances under which the said property came into his hands, so that the court may determine whether or not the said property is that of defendant Palmer or defendant Bank of Sturgeon. That the defendant Bank of Sturgeon as garnishee, after attachment of the above fund and publication, be required to answer how much and in what way it is indebted to the defendant Stanley Palmer.

"That this bill be treated as a garnishment bill and the answer of defendants Klyce and Bank of Sturgeon be also answers to the attachment and garnishment served upon them.

"That defendant Stanley Palmer be required to answer this bill; but his answer under oath is waived.

"That upon the hearing, complainant have a decree against the defendant Stanley Palmer for the amount above stated, which he has lost on account of said defendant's breach of contract and warranty. That if the fund in the hands of defendant Klyce belong to defendant Palmer, it may be subjected by proper orders of the court to the payment of said decree, and that the complainant have a judgment against the defendant Klyce accordingly. That if the fund in the hands of Klyce be the property of the Bank of Sturgeon, then that a judgment be had against the Bank of Sturgeon, as garnishee, on account of funds in its hands belonging to defendant Palmer, and that the fund in the hands of Klyce be held and subjected by this court to the satisfaction of the decree against the Bank of Sturgeon and judgment be rendered in favor of the complainant against defendant Klyce accordingly.

"Complainant prays for all such general and special relief as, under the facts, he may be entitled to.

"This is the first application for writ of attachment."

The bank appeared in the Tennessee court and answered, as did also Klyce. Palmer, although notified by publication, failed to appear and as to him the complaint was taken *pro confesso* and judgment rendered as follows:

"This cause was heard this day before the Hon Francis Fentress, chancellor, etc., upon the original bill of the complaint, the answer thereto of the Bank of Sturgeon, Inc., and of Henry A. Klyce, and the order *pro confesso* heretofore entered against the defendant Stanley Palmer. Whereupon, it appearing to the court from the bill which has been ordered to be taken for confessed by defendant Stanley Palmer, that the defendant Stanley Palmer is indebted to complainant, G. T. Taylor, in the sum of $908.83, and it appearing from the sworn answer of the Bank of Sturgeon, garnishee, which is a non-resident corporation, that it is indebted to the defendant Stanley Palmer in the sum of $705.92, and it appearing from the answer of defendant Henry A. Klyce, a resident who has been served with process, that he is indebted to the defendant the Bank of Sturgeon in the sum of $440, and that he has paid said sum into court pursuant to an order made in this cause on November 10, 1915, and it further appearing that said sum has been regularly impounded by writ of attachment issued by this court, together with process for the resident defendant, Henry A. Klyce, and publication as required by law for the defendants Stanley Palmer and the Bank of Sturgeon, both non-residents, said publication being returnable to the January, 1916, rules, and the defendant the Bank of Sturgeon having answered as before stated and the defendant Stanley Palmer having failed to answer and an order *pro confesso* having been entered; it is therefore ordered, adjudged and decreed that the complainant, G. T. Taylor, have and recover of

the defendant Stanley Palmer the sum of $908.83, together with all the costs of this cause; that the attachment issued in the cause be and the same is hereby sustained; and that the $440 found to be due by Henry A. Klyce to the Bank of Sturgeon, which is in turn indebted to Stanley Palmer in a greater sum, be subject to and applied to the payment of the said decree in favor of the complainant, G. T. Taylor, against the defendant Stanley Palmer. The said sum of $440 having been paid into court and now being in the hands of the clerk and master, it is ordered that the costs of the cause be paid out of the said fund and the balance paid to the complainant or his attorney of record upon the decree herein rendered. It further appearing to the court that this bill was filed on the twenty-eighth day of June, 1915, and that the Bank of Sturgeon, which was the regular bank and place of deposit of defendant Palmer, had notice thereof upon the day it was filed, and that Henry A. Klyce was served with process on the same day, and that the defendant Klyce has held subject to the orders of the court since that date the sum of $440 belonging to the Bank of Sturgeon, which bank in turn held subject to the orders of the court the deposit of the defendant Stanley Palmer in said bank and that, therefore, defendant Stanley Palmer has had since the filing of this bill actual notice thereof, as well as the constructive and legal notice given by publication, it is ordered that this decree be and the same is hereby made final.''

The section of the Tennessee statute upon which the proceeding in the Tennessee court of chancery rests as to the defendant bank is as follows:

''Be it enacted by the General Assembly of the State of Tennessee, that when any person or persons who are non-residents of the State, have any choses in action, or any other property in this State, and indebted to any persons who are non-residents, and the last named non-residents shall be indebted to any citizen of this or any state or states, it shall be lawful for the last named creditor or creditors, without having first secured a judg-

ment at law, to file a bill in chancery to have said debts, choses in action, or other property attached, and the person or persons who owe said debts to said non-residents, and the person or persons in whose possession such choses in action or other property may be, shall be made defendants to the bill."

Section 3493 of the Tennessee Code is as follows: "The judgment in the garnishment suit, condemning the property or debt in the hands of the garnishee to the satisfaction of the plaintiff's demand, is conclusive as between the garnishee and defendant."

In its answer to the Tennessee complaint the defendant bank did not question the constitutionality of Section 5219, nor did it raise any constitutional objection to the proceeding nor did it take any steps by appeal, writ of error or otherwise to review the judgment.

I.    There is no question between the parties as to the facts in the case.    While we have no doubt that they are sufficiently stated in the pleadings, we have, in the foregoing statement, referred to the evidence that their meaning may more clearly appear.    Their legal effect may be stated as follows:

The plaintiff was a Missouri farmer engaged quite extensively in raising corn, and has never been in the State of Tennessee. The defendant is a Missouri bank through which he transacted his banking business. He sold a considerable quantity of corn to one Taylor, in Memphis, Tennessee, shipping the corn from *Appearance.* Sturgeon, Missouri, by rail, and collecting the proceeds through the defendant bank by draft on Taylor to which the bills of lading were attached. To secure the payment of these drafts Taylor kept on deposit in the Bank of Sturgeon $500. Four cars of corn had been handled in this way when, on March 13, 1915, Taylor drew on the defendant bank for the $500 then on deposit and the draft was in due course presented and paid on the 17th of the same month.

Without having any notice of this surrender of his security, plaintiff loaded another car of corn for delivery at Memphis, for which he received his bill of lading, and took it to the bank to draw on Taylor for the proceeds, and was informed by defendant of the fact that Taylor had no deposit against it. Plaintiff was greatly dissatisfied, but drew his draft on Taylor which was duly dishonored by the drawee and returned to the Bank of Sturgeon. Plaintiff naturally blamed the bank and threatened to sue it for surrendering his security without notice to him, and the bank, to settle the matter, purchased the corn, paying for it the amount of the draft, received its title by assignment of the bill of lading and sent it to one Klyce, a grain factor, doing business in Memphis, for disposition for its account. Klyce sold the corn for $440, receiving the money therefor, which is now the bone of contention. That this money rightfully belonged to the defendant is evident, and is frankly admitted by both parties to this suit, and was so adjudicated by the Chancery Court of Shelby County, Tennessee. So far as Mr. Taylor was concerned he had, by the withdrawal of his deposit from the defendant bank, successfully laid the foundation for the chancery suit which he began in Tennessee as soon as Klyce received into his hands the $440.

When the suit was brought at Memphis, the defendant bank employed attorneys to enter its appearance, and defended it. The other defendants were Klyce, who held the money for the bank, and the plaintiff, against whom Taylor was seeking to collect damages which he claimed to have been sustained on account of the poor quality of the four previous carloads of corn which he had purchased and paid for. This last defendant was notified by publication but did not appear.

In the Tennessee chancery suit two separate and distinct burdens rested upon Taylor. The first of these was to recover judgment against Palmer on the claim presented by the bill, and the second, if he should recover such judgment, to subject the money of the bank

in the hands of Klyce to its satisfaction. The first of these issues was with Palmer and the second with the defendant bank. The question whether jurisdiction of the bank in Missouri could be obtained through the process of the Tennessee court in that suit is unimportant, because it voluntarily submitted itself to the jurisdiction by going into court and trying the issue upon its merit, thus brushing aside all questions of the right of the complainant to obtain jurisdiction of its person. It might, perhaps have appeared only for the purpose of pleading to the jurisdiction, but it did not. It appeared generally. If it could lawfully have appeared for the purpose of objecting to the jurisdiction of the court over Palmer, the principal defendant, it raised no such question. Nor did it assert the unconstitutionality of that section of the code which authorized constructive service upon both. It went to trial upon the merits of its case and was defeated and will not now be permitted to deny validity of the judgment in that respect. But that judgment was only ancillary to the principal issue, the indebtedness of Palmer, who was entitled to his day in court before his property, wherever it might be situated, could be subjected to the payment of the claim. So that unless his property had been lawfully seized by the Chancery Court in Tennessee the judgment against him was a nullity, he being at the time a resident of Missouri and not within the jurisdiction of the court at the time. It is true that had he been in Tennessee and had demanded from defendant bank the payment of his check for the amount of his deposit and it had been refused, he could have sued in Shelby County before any court of law having jurisdiction of such purely legal demands in that county, and in aid of such suit could have attached this very fund and thus appropriated it to the payment of his demand under the provisions of Sections 3461 and 3463 of Shannon's Code of Tennessee. This jurisdiction would have rested upon the fact that he had found *the property of his debtor* in Tennessee and therefore subject to the jurisdiction of that State. In this case no such condition exists. Palmer

himself is the debter.  He had no property in Tennessee and he denies that jurisdiction of his person could be obtained in that State by attaching the property of a stranger to the controversy, a bank in the State of Missouri, because the bank owed him an equal amount payable upon his check and over its counter in that state. Both parties freely admit that if the judgment so obtained in Tennesse was valid and binding as against Palmer he cannot recover in this suit.  If it was void the judicial appropriation of the $440 in the hands of Klyce to its payment did not bind him and he should have judgment for the balance of his deposit as demanded in this suit.  The defendant had its day in the Tennessee court, where this defense was open to it and its failure to make it cannot prejudice the right of the plaintiff.

II.  It will be seen from the foregoing that both parties concur in the view that this case hangs solely upon the point whether the Tennessee judgment against Palmer was valid or void as against Palmer, who did not appear to the suit and was not served with process within the State of Tennessee.

Jurisdiction

At the foundation of this question lies the principle which cannot be too often repeated that the jurisdiction, both legislative and judicial, of the several States of this Union, is, subject to the powers granted to the Federal Government by the Federal Constitution, supreme and absolute over all persons and property within their respective jurisdictions.  The word "respective" as we have used it to express the individual identity of the States is used to the same purpose in Article Ten of the Amendments to the Constitution which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States are, reserved to the States respectively, or to the people."  By its terms the jurisdiction of each state is protected against invasion of the others.  It is the foundation of the rule so often repeated by the courts, both State and

Federal, that no judgment of a state court can have any validity unless supported by personal notice to the defendant, served within the state, or by his voluntary appearance and submission to the jurisdiction except in so far as it may be directed against property actually within the State and therefore subject to its jurisdiction. In that case the several states, through their Legislatures, have provided for proceedings in their courts against such property upon constructive notice to the non-resident owners with the same effect, as to the property, as upon personal service within the State; and judgments rendered upon such notice against the property within the territorial jurisdiction of the State are held to constitute due process of law within the meaning of the Fourteenth Amendment of the Federal Constitution. This doctrine was long ago stated and explained by this court in Smith v. McCutchen, 38 Mo. 416, in which we said: "No sovereignty can extend its powers beyond its own territorial limits to subject either persons or property to its judicial decisions. Jurisdiction must be founded either upon the person of the defendant being within the territory of the sovereign where the court sits, or his property being within such territory; for otherwise there can be no sovereignty exerted, upon the known maxim, *extra territoriam jus dicenti impune non paretur.* Even, therefore, should a legislature of a state expressly grant such jurisdiction to its courts over persons or property not within its territory, such grant would be treated elsewhere as a mere attempt at usurpation, and all judicial proceedings in virtue of it held utterly void for every purpose." At that time the doctrine was an old one and has since been persistently reiterated by this court as well as by the Supreme Court of the United States. [Latimer v. Union Pacific Ry., 43 Mo. 105; Marx v. Fore, 51 Mo. 69; Eager v. Stover, 59 Mo. 87; Wilson v. St. Louis & S. F. Ry. Co., 108 Mo. 588; Assurance Co. v. Walden, 238 Mo. 49; Pennoyer v. Neff, 95 U. S. 714; Life Insurance Co. v. Dunlevy, 241 U. S. 518.] In the case last cited the court says (page 522): "It

has been affirmatively held in Pennsylvania that a judgment debtor is not a party to a garnishment proceeding to condemn a claim due him from a third person and is not bound by a judgment discharging the garnishee (Ruff v. Ruff, 85 Pa. St. 333), and this is the generally accepted doctrine. [Shinn on Attachment and Garnishment, sec. 728.] Former opinions of this court uphold validity of such proceedings upon the theory that jurisdiction to condemn is acquired by service of effective process upon the garnishee.

"The established general rule is that any personal judgment which a state court may render against one who did not voluntarily submit to its jurisdiction, and who is not a citizen of the State, nor served with process within its borders, no matter what the mode of service, is void, because the court had no jurisdiction over his person."

From the law declared in that case and applied to this it follows that the plaintiff was not a party to the garnishment proceeding in the suit between Taylor and the defendant bank and was not bound thereby unless he was properly before the court upon that issue at the time of the trial upon the notice by publication.

III. We now return to the question of the validity of the notice to plaintiff upon which it is now sought to bind him by the Tennessee judgment. It is admitted that he was a resident of Missouri and that, up to the time of the trial of the cause, he had never been in Tennessee, so that the court was without jurisdiction of his person and the judgment under which the money in the hands of Klyce was paid to Taylor was void as to him, unless supported by the fact that the proceeding was *in rem* against his property in that state. We are met at the threshold of this inquiry by the admitted fact that he had no interest whatever in the money impounded in that case and paid into court. So that we must look elsewhere for the *res* of which the Tennessee court is said to have acquired its jurisdiction *in rem,* and find it deposited in the

defendant's bank in the State of Missouri as a general deposit which was payable at the counter of the bank upon the presentation, during banking hours, of a check or other proper writing demanding the whole or any part thereof. Neither the Tennessee court nor the Tennessee Legislature had any power to modify the contract without consent of the depositor, nor did the bank have such power without the like consent. The only claim to jurisdiction over plaintiff or his property is founded upon the fact that the Missouri bank owed him $440, payable only in Missouri upon demand, so that this money was attached by equitable garnishment by the process of a Tennessee court by authority of a legislative act of that State. That this process gave the court no jurisdiction of the plaintiff for the purpose of adjudicating his personal liability to Taylor is amply shown by the cases we have cited. That he was not bound by the adjudication, in his absence, logically and necessarily follows. That the bank's attorney appeared in the Tennessee court and paid the Taylor claim without adjudicating it, gave the court no jurisdiction over Palmer, and the respondent's attorneys very properly present the case here upon the theory that such jurisdiction and the consequent validity of the judgment against plaintiff is necessary to their recovery.

In accordance with these views the judgment of the trial court should, upon the pleadings and admitted facts, have been for the plaintiff and we accordingly reverse the judgment and remand the cause with direction to so enter it.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the Court in Banc. All concur except *Woodson, J.,* who dissents.