SMITH v. EL PASO & N. E. R. CO. et al.
No. 2871.

Court of Civil Appeals of Texas. El Paso.
Nov. 2, 1933.

On Motion for Rehearing, Dec. 21, 1933.

On Second Motion for Rehearing, Jan. 11, 1934.

between an automobile and an engine being operated on one of the streets in the city of El Paso. The suit is brought by Frank C. Smith against the El Paso & Northeastern Railroad Company, W. W. Wonner, and the Southern Pacific Company, to recover damages for himself and as next friend for the use and benefit of Robert Stevens and Georgia Stevens, minor children of his deceased wife, Mrs. Mousie Smith, who was killed in the collision between the automobile she was driving and the locomotive engine with a tender attached which constituted the entire train operated by W. W. Wonner, as engineer for the Southern Pacific Company.

The place of the collision was where the railroad tracks intersect Piedras street in the eastern part of the city, and while the engine was being backed across said street.

In considering the questions presented here, we think it necessary to state only a few of the issues submitted to the jury and the jury's findings thereon.

The jury found that Mrs. Mousie Smith, in approaching the railroad crossing on the occasion in question, was negligent in several instances proximately causing or contributing to cause the collision in which she was killed, in failure to keep a lookout, and in approaching said railroad crossing.

The jury found that appellees were negligent in several acts assigned, and which negligent acts proximately caused the collision which resulted in the death of Mrs. Smith. Among the appellee's negligent acts the jury found, on the issue of discovered peril, that the employees of the Southern Pacific Company, "before the collision, discovered and realized that Mrs. Smith was probably going to attempt to cross in front of the tender of the engine and would probably be injured unless steps were taken by them to avoid or minimize such injury, in time, by the use of ordinary care, with the means available consistent with their own safety, to have avoided the death of Mrs. Smith"; that defendants' (Southern Pacific Company) employees "were negligent in the use of the means then available to them to have avoided, or minimized such injury to Mrs. Smith"; and that such negligence was "a proximate cause of the death of Mrs. Smith." The jury made other findings, such as the damages sustained by appellants. Appellants moved for judgment on the ground that the jury had found for them on the issue of discovered peril. The court overruled the appellant's motion, to which they duly excepted. On motion of appellees duly made, judgment was entered in their favor and against appellants non obstante veredicto, to which appellants excepted and gave notice of appeal.

Robert L. Holliday and Henry T. Moore, both of El Paso, for appellant.

J. W. Morrow and Del W. Harrington, both of El Paso, for appellees.

WALTHALL, Justice.

This case presents an action brought to recover damages growing out of a collision

The court overruled appellants' motion for a new trial, and appellants prosecute this appeal.

## Opinion.

Appellants duly plead discovered peril as one of the acts of negligence on the part of appellees which caused the collision with the automobile driven by Mrs. Smith and resulting in her death. Evidence was submitted on the issue of discovered peril; the issue was submitted to the jury; the jury found the issue in favor of appellant and of discovered peril as found was a proximate cause of the collision resulting in the injuries and death therefrom of Mrs. Smith. The trial court rendered judgment for appellees, and appellants submit that, where the issue of discovered peril is pleaded as negligence on the part of the operatives of the engine proximately causing the injuries complained of and evidence is offered which justifies the submission of the issue and the finding of the jury on the issue, it is immaterial that the jury also finds the deceased, Mrs. Smith, guilty of contributory negligence proximately contributing to cause the collision, and judgment should be for appellant.

Appellees submit the counter proposition to the effect that the court properly sustained appellees' motion for judgment non obstante veredicto.

■ The evidence on the issue of discovered peril is lengthy. Both sides quote from the evidence in the briefs. We have reviewed the evidence with much care, and have concluded that the evidence is sufficient to justify the submission of the issue and to sustain the jury's finding thereon.

Briefly stated, the evidence on the issue of discovered peril is sufficient from which the jury could find: The appellees' train at the time and place of the collision consisted of an engine and tender. The time was about 8:30 in the morning. The engine and tender, going east, had reached Piedras street, a busy street at that time of the day; at that place the engine and tender were going slightly up grade and at a speed of from eight to ten miles an hour. Mrs. Smith's automobile was then approaching the street crossing from the north at a speed of some twenty-five miles an hour. Brakeman Sears was standing on the north side of the front end of the tender step with his right hand on the ladder. He first saw Mrs. Smith's car approaching the crossing at a distance of 75 to 100 feet from the street crossing. He testified that about the west curb of the street he gave a signal to engineer Wonner to back up faster, which he did, and the speed increased. Brakeman Sears was at his place to give signals, but gave no sig-

nal at any time to stop the engine. A car was standing in the street on the north side of the track; Sears saw the Smith car slow up behind the standing car and then drive around it when the rail of the tender struck the car and pushed it about 20 feet after the impact before Mrs. Smith fell out. At the time witness saw the Smith car coming from behind the standing car, he felt the air applied on the tank (tender).

Witness Wonner testified: Was engineer on the engine at the time of the collision when Mrs. Smith was killed at the Piedras street crossing. Before reaching Piedras street crossing, witness closed the throttle to what witness called a "drifting throttle," which gives the engine just enough steam to keep the compression out of the cylinders, and the engine slowed to seven or eight miles an hour; during that time the steam was shut off. Witness saw a car come (on the north side) and stop; about the time the rear of the tank reached the (west) edge of Piedras street, Sears, the brakeman on the tank, gave a signal to come on; witness opened the throttle, gave the engine steam and about the time the rear of the tank got to the street car track (in Piedras street) the brakeman gave a violent stop signal (the brakeman testified he gave no signal), and about the same time witness noticed the (Smith) car coming on the east side of Piedras street, apparently trying to pass behind; witness immediately closed the throttle; the engine had sanders, but witness did not apply sand; did not put the engine in reverse; witness closed the throttle and applied the emergency brake; the engine was "wide open" when it went over Piedras street, that is, giving it all the steam it will take. (Witness states the location on the engine of the throttle and the emergency brake and witness' position with reference to them.) Witness cut off the throttle when he had the signal from the brakeman and saw the Smith car. The engine, going as it was, the best you could do, you could stop it about 150 or 200 feet, and going at four, six, or eight miles the distance would decrease proportionately. Witness located the angle cock on the front of the engine and on the tank near where the brakeman Sears was on the sill. They are opened and closed by hand; that would apply the emergency brakes immediately the same as the lever in the engine cab could. Sears was on the sill step or the rear tank step, was facing the way the engine was going. To protect himself from injury by the impact with the automobile, he climbed up the step above the sill. When witness first saw the Smith car, it was 3 or 4 feet east of the street car track (in the middle of the street) and 15 or 20 feet north of the railroad track. Did not

see the Smith car back of the standing car; saw it "after it was passing the (standing) car."

John W. Woodley, a locomotive engineer and fireman, testified: "Assuming that an S. P. engine of 3700 class is backing up a 1% grade and the brakes were in good condition and rails were in condition * * * I would say an engine could be stopped going at from 8 to 10 miles an hour, in 45 feet." Witness had often stopped an engine in 28 feet when going ten miles an hour.

Mrs. Smith was taken out from under the engine about 100 feet from the east side of Piedras street.

Assuming that the issue of discovered peril was properly submitted and sufficiently sustained by the evidence, the question is then presented: What judgment should the court have rendered on the jury's verdict? Two grounds for judgment in appellees' favor are suggested in the motion, negligence on the part of Mrs. Mousie Smith proximately contributing to cause the collision, and that the issue of discovered peril has no support in the evidence.

The judgment, by its verbiage, sustains both grounds of the motion.

■■ That the jury's finding of negligence on the part of Mrs. Smith has support in the evidence is not questioned by appellant. Brakeman Sears testified that he saw the Smith car some 50 or 75 feet from the parked car (Marston car) coming in the direction of the railroad crossing. That would put the Smith car some 75 to 100 feet from the railroad crossing when first discovered by the brakeman Sears. There is no evidence in the record that the Smith car stopped at any time before the impact. Sears denied that he gave a stop signal to the engineer, and gave as a reason for not doing so that the engineer could see the advancing Smith car. Then we have a situation as the jury might view it, the Smith car discovered at a distance of from 75 to 100 feet, and at that time going at a speed toward the railroad crossing of about thirty miles, and, after passing the parked Marston car, the speed reduced to fifteen or sixteen miles per hour when the impact occurred. Now to discover approaching cars was Sears' duty. No evidence that he made any use of the angle cock to stop or reduce the speed of the engine, though apparently within his reach. He gave no signal to the engineer. As said in Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767, 770, Sears could not in the very nature of things actually know what was in the mind of the driver of the Smith car when driving towards the railroad crossing. It was Sears' duty, if he discovered the Smith car approaching the crossing and could reasonably infer that the driver would likely undertake to cross the track, to use the facilities at hand to prevent a collision, either by stopping or by lessening the speed of his train. As said in the case referred to Sears "had no right to wait until he was absolutely certain that the traveler was going into a place of danger before taking the proper steps to avoid injuring him." It seems to us that the jury might have thought that Sears should have given the engineer "the violent stop" signal testified to by Wonner at a time when the engineer could have stopped or slowed the engine down and avoided the collision. That was what he was on the tender for. We cannot say, in the face of the uncontroverted evidence, that the jury might not have taken that view.

Again, the jury could have found under the evidence that the engine could have been stopped at a shorter distance than it was and thus have avoided the death of Mrs. Smith. From the evidence, without quoting it, the automobile was pushed or dragged along after the impact for some 100 feet, and that Mrs. Smith was not run over and killed until she fell out of the automobile at a distance of about 100 feet from the point of the impact.

As we view the evidence, we cannot say, as a matter of law, that the evidence was not sufficient to take the case to the jury.

■ We think we need not discuss the question as to what the judgment of the trial court should have been, if the evidence was sufficient to sustain the jury's finding on the issue of discovered peril. We concur in appellant's statement of the law that, where the evidence is sufficient to sustain the issue of discovered peril and the jury so finds, it is immaterial that the jury also finds that the deceased was guilty of contributory negligence, since contributory negligence is no defense to the action where the situation of peril was discovered by appellees in time to avoid the injury and sufficient effort was not made to avert it. Wilson v. Southern Traction Company, 111 Tex. 361, 234 S. W. 663, and the several cases there referred to by Judge Greenwood in discussing that case.

In view of another trial we think it might be said that, in our opinion, under the facts of the case, appellees should be allowed to exercise only six peremptory challenges. Article 2148, R. C. S.; Hargrave v. Vaughn, 82 Tex. 347, 18 S. W. 695; International-G. N. R. R. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886.

We have concluded that the case should be reversed and remanded, and it is so ordered.

On Motion for Rehearing.

Appellant and appellees each file a motion for rehearing. We will first consider appellees' motion.

■ Error is assigned to the opinion holding that appellees were entitled only to six peremptory challenges. Appellees neither discuss nor refer to any authority to sustain

their contention. The authorities referred to in the opinion, we think, sustain the view there expressed. The statute (Rev. St. 1925, art. 2148), in civil cases, expressly allows six peremptory challenges to "each party." Party does not mean person. Several defendants having identical interests in the suit constitute but one party. Interests are identical where the grounds of defense are common to all. There is no suggestion of antagonism of interest in the pleading or issues tendered between defendants.

■ Allowing more peremptory challenges than defendants were entitled to exercise constitutes error, and is reversible error where, as here, appellant exhausted his challenges and, by reason of the number of challenges allowed and exercised by appellees, was required to accept on the jury former employees of the defendant railroad company, objectionable to plaintiff appellant, and which he desired to challenge. For that reason alone the case must necessarily be reversed. In addition to the cases referred to in the opinion, we will add Texas Jurisprudence, vol. 26, pp. 666 and 667, pars. 100 and 101 et seq., and cases there referred to in the notes.

■■ Other grounds for a rehearing assigned in appellees' motion are: Error in holding that the evidence as shown by the record is sufficient to warrant the submission of the issue of discovered peril; in our holding that the trial court erred in sustaining appellees' motion for judgment non obstante veredicto; in our holding that, under the facts disclosed by the evidence, it was brakeman Sears' duty to use the facilities at hand, after discovering the approach of Mrs. Smith, to prevent a collision, and that he had no right to wait until he was absolutely certain that the deceased was going into a place of danger before taking proper steps to avoid injuring her. It is submitted that our holding is in conflict with the oft-referred to decisions of the Supreme Court cited in the motion. In the opinion we referred to and closely applied Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767, in which a writ of error was refused. That case has several times been referred to with approval in similar cases. Texas & N. O. R. Co. v. Goodwin (Tex. Civ. App.) 40 S.W.(2d) 182, 188; Texas & N. O. R. Co. v. Crow, 121 Tex. 346, 48 S.W.(2d) 1106; Houston Electric Co. v. Settle (Tex. Civ. App.) 51 S.W.(2d) 648.

We think there is no conflict in our holding with the cases referred to in appellees' motion. The case having been submitted to the jury on the material issue of discovered peril, and the jury, under the evidence heard, having found for the plaintiff on that issue, the court should have entered judgment for plaintiff, and, should the court then be of the opinion, as he evidently was, that the issue of discovered peril was not sustained by the evidence, he should have set the finding aside or rendered a judgment in accordance therewith.

Fitch v. Lomax et al. (Tex. Com. App.) 16 S. W.(2d) 530, 66 A. L. R. 758. In that case the Commission of Appeals held that, where the answer of the jury was to a special material issue under the pleadings and the evidence, the court was not authorized to render a judgment contrary to such finding. See, also, Ablowich v. Greenville Nat. Bank, 95 Tex. 429, 67 S. W. 79, 881; Parker v. Solis (Tex. Civ. App.) 277 S. W. 714, 717; Compton v. Skeeters (Tex. Civ. App.) 250 S. W. 201.

As said in Texas Jurisprudence, vol. 25, p. 498, par. 112, in stating the rule prior to the amendment of 1931, General Laws, 42d Leg. 1931, c. 77, p. 119 (Vernon's Ann. Civ. St. art. 2211), under the relevant statutes (providing that the judgment must conform to the verdict) it was the settled practice that the trial courts were in no case authorized to substitute their findings for those of the jury and to render judgments contrary to the verdict. The exception to the statutes requiring that the judgment conform to the verdict as found in the amendment reads as follows: "Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

In Waitz v. Uvalde Rock Asphalt Co. (Tex. Civ. App.) 58 S.W.(2d) 884, 886, where the trial court, on the facts of that case, disregarded the verdict of the jury and rendered judgment, it is said: "This procedure is authorized by [the amended statute as above quoted] where a directed verdict would have been proper."

■ Article 2209 provides that, where a special verdict is rendered, the court shall render judgment thereon, unless set aside or a new trial is granted. While the court in the exercise of discretion may set aside a verdict on special issues without having first rendered judgment thereon, we understand the court in Cortimeglia v. Davis, 116 Tex. 412, 292 S. W. 875, as holding that the court may not refuse to enter judgment on a verdict which constitutes a finding on all the facts tendered in the pleadings necessary to the rendition of judgment. If the verdict on a material issue is not supported by the evidence it may not be disregarded if it is responsive to the issue pleaded and submitted and in proper form. Carwile v. William M. Cameron & Co., 102 Tex. 171, 114 S. W. 100. Where the recent statute authorizes the rendition of judgment non obstante veredicto, we think the verdict, while undisturbed, must be the basis of the judgment. Such has been the rule whether the verdict was correct or not. Peeler v. Smith (Tex. Civ. App.) 18 S. W.(2d) 938, affirmed (Tex. Com. App.) 29 S.W. (2d) 975; North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W.(2d) 59. There are some cases

referred to in Texas Jurisprudence, vol. 25, p. 499, under note 11, which apparently hold to the contrary.

We have concluded that, under the undisputed evidence in the case, a "directed verdict" would not have been proper, nor could the court properly disregard the finding on the issue of discovered peril as having "no support in the evidence." If we are not in error in so holding, it necessarily follows that it was error to enter judgment non obstante veredicto on the defendants' (appellees') motion. While appellees, in their brief, quote largely from the evidence, we do not find in the brief or in the motion or in the judgment where they point to a material fact on the issue of discovered peril on which no evidence was offered by appellants to sustain the issue.

We said in the opinion that "Mrs. Smith was not run over and killed until she fell out of the automobile at a distance of about 100 feet from the point of the impact." The evidence does not show definitely just where she was killed, whether before or after she fell, or was thrown, out of the automobile. The evidence shows that she was taken from under the cowcatcher of the engine at a point 100 feet from the point of the collision. While the same witness also said she fell from the automobile about 100 feet from the place of the collision, we meant to state only what the jury, under the evidence, was authorized to find, and did not intend to make any finding. The distances and the speed of the engine and automobile in question were all estimates, and in some instances the estimates differed materially.

Appellees' motion is overruled.

Appellant submits that this court, having found that the evidence was sufficient to have the issue of discovered peril submitted to the jury and sufficient to support the jury's finding on that issue, should have reversed and rendered judgment for appellant.

There is no suggestion by either party that the case has not been fully developed.

We have again reviewed the evidence, and we think that it cannot be successfully maintained an instructed verdict could properly have been given, nor do we think that "there is no evidence to support the findings of the jury," on said issue.

Having concluded that under the record, as presented here, the trial court was in error in entering judgment non obstante veredicto for appellees on their motion, the difficult question is present as to the judgment that should now be rendered by this court.

The opinions of the courts are not uniform as to the disposition that should be made of the cases under similar conditions. Article 1856 of the statute provides that: "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

To that statute the exception above referred to and constituting a part of article 2211 as amended by Acts 1931, c. 77 (Vernon's Ann. Civ. St. art. 2211), has been added, and which exception we have concluded has no application under the evidence as we view it.

In Sovereign Camp, W. O. W., v. Patton, 117 Tex. 1, 295 S. W. 913, 915, the Supreme Court held the statute quoted is in its terms mandatory, and, after stating the reason for the rule of practice, further said: "The obligation to do so [to render such judgment as the lower court should have rendered] in a proper case has been clearly recognized and is not to be lightly disregarded. Any discretion which the courts may exercise in construing and applying the exception branch of the statute is a judicial, and not an arbitrary, one. In some cases the Courts of Civil Appeals have no option. Their proper discretion consists in their right to determine when the exception to the general statutory rule applies, and not in their right to apply the rule, or not, as they deem best, where the record is such as to clearly bring the case within the general terms of the statute."

The want of uniformity in the opinions seems to result from the application the courts make of the exceptions set out in the statute quoted, and which the Supreme Court, in the case from which we have quoted, says "have definitely qualified the peremptory character of its initial provision" of the statute.

We think the trial court should have entered judgment for appellant on the verdict whatever disposition of the case he might have thought to thereafter make of the case. As it now is, the judgment has no basis in the verdict. To remand the case, should the evidence be substantially as on this trial and the trial court be of the same opinion as expressed in the judgment on this trial, a mistrial would necessarily result.

As said by the Commission of Appeals in Waldo v. Galveston, H. & S. A. R. Co., 50 S. W.(2d) 274, the case should be reversed or remanded according to which will better subserve the ends of justice.

We have concluded that appellant's motion ought to be sustained, and it is so ordered.

The case is reversed, and here rendered in favor of appellants.

### On Second Motion for Rehearing.

PELPHREY, Chief Justice.

Among other grounds for a rehearing, appellees present the following:

"(3) The court erred in holding under the facts in this case that after Sears discovered the Smith car approaching the crossing and could reasonably infer that the driver would likely undertake to cross the track, it was his duty to use the facilities at hand to prevent a collision either by stopping or lessening the speed of his train and that he had no right to wait until he was absolutely certain that the deceased was going into a place of danger before taking the proper steps to avoid injuring her, because such holding announces a rule of law contrary to and in conflict with the decisions of the Supreme Court of Texas, and Courts of Civil Appeals, respectively, in the cases of Texas & Pacific Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Texas & Pacific Co. v. Staggs, 90 Tex. 458, 39 S. W. 295; Martin et al. v. Railway, 87 Tex. 123, 26 S. W. 1052; St. L. S. W. Ry. Co. v. Watts, 110 Tex. 106, 216 S. W. 391; International & Great Northern Ry. Co. v. Ploeger et al. (Tex. Civ. App.) 96 S. W. 56; Fort Worth & Denver City Ry. Co. v. Shetter, 94 Tex. 199, 59 S. W. 533; M. K. & T. Ry. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013; Schaff v. Gooch (Tex. Civ. App.) 218 S. W. 873; Texas & New Orleans Ry. Co. v. Wagner (Tex. Civ. App.) 262 S. W. 902; San Antonio Traction Company v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 65, and Northern Traction Company v. Southern Surety Co. et al. (Tex. Civ. App.) 250 S. W. 229, in this, to-wit: That the decision of this court would impose upon brakeman Sears the duty, when he discovered the deceased's automobile slowing down behind a car that was already parked awaiting the passing of the locomotive over the street crossing, when it appeared to him, Sears, that said car was going to stop behind the car that had stopped to await the passing of such locomotive over the crossing, and at a time when said deceased was not in a perilous situation and was absolutely free from any danger of injury at a distance more than 75 feet from the railway track, of stopping his engine at a time when it was in full view of the deceased and when she could have, by the exercise of any care whatever, remained clear and free from any perilous situation or danger by reason of the moving of said locomotive over such crossing, while the rule announced in the cases above mentioned imposes no duty upon Sears to have stopped his engine or lessened the speed thereof until it became known to him that the deceased was actually exposed to imminent danger.

"(4) This court erred in applying the doctrine of discovered peril to this case based upon the circumstance of Brakeman Sears having discovered the automobile driven by deceased, Mrs. Mousie Smith, as it was approaching the railway crossing at a distance of some 75 feet and slowing down behind a car referred to in the record as the Marston car."

■ Appellees' counsel, it appears from the above, construes our holding to be that Sears should have taken some steps, when he first saw the Smith car approaching, to have prevented the collision. Such is not the conclusion reached by the writer. In view of the testimony of Sears that the automobile slowed down behind another automobile and the testimony of Mrs. Jennie Thompson that Mrs. Smith slowed down the automobile at Grant avenue, I am of the opinion that Sears was justified, in concluding that the automobile was going to wait until the engine had passed the crossing. I am also of the opinion that Sears' action, when he saw the car coming around the standing car and realized that the driver was attempting to cross behind the engine, did not render his employer liable under the doctrine of discovered peril; the record showing that he was occupied in getting himself into a place of safety and therefore had neither time nor opportunity to use the means at hand to prevent the injury to Mrs. Smith. As to Wonner, however, I feel that things were different. He testified that when he first saw the Smith car it was 3 or 4 feet east of the street car track and 15 or 20 feet north of the railroad track, and after it was passing the standing car. It thereupon became his duty to use all the means at hand to avoid injuring the occupants of the car. While it is true that the record shows that a use by him of all the means possible would not have prevented the original impact, yet there is evidence, I think, which shows that, if he had used all the means at his command, the Smith car would not have been carried to the point where, as some of the testimony shows, Mrs. Smith fell out and was thereafter injured; at least, there is evidence sufficient to raise an issue on that question. The witness Woodley testified that the engine involved in this accident compared substantially with the engines he had been operating; that the braking equipment was identically the same; that an engine of such type, equipped as it was, backing up a 1 per cent. grade at a speed of eight to ten miles per hour, could be stopped within 45 feet; and that he had stopped a similar engine going ten miles per hour in 28 feet.

The witness Gomez testified that Mrs. Smith fell out of the automobile just about 100 feet east of the east side of Piedras street.

The testimony of Woodley, if believed, would show that Wonner did not stop the engine as soon as it could have been stopped, and from the other evidence in the case it is made to appear that, if he had so stopped it, Mrs. Smith would never have fallen out of the automobile and probably would not have been killed.

I am of the opinion that these facts and circumstances make an issue of fact as to whether or not appellee's agents used all the means at hand to avoid injuring Mrs. Smith, after

they found her to be in a position of danger and that the jury's finding on the issue of discovered peril is supported thereby.

The motion for rehearing should, therefore, be overruled.

HIGGINS, Justice.

The foregoing, by Chief Justice PELPHREY, states my view upon the issue of discovered peril.