## PEELER et al. v. SMITH. (No. 8233.)

Court of Civil Appeals of Texas. San Antonio.
June 12, 1929.

Rehearing denied July 3, 1929.

C. J. Matthews, Clamp & Searcy, and Terrell, Davis, McMillan & Hall, all of San Antonio, for appellants.

Matlock & Kelly, of San Antonio, for appellee.

COBBS, J. Appellee sued appellants and obtained judgment for the cancellation of a lease to bore for oil or gas on land belonging to appellants in Atascosa county, Tex. The contract was strictly a drilling contract. The appellee was to have a lease on the Peeler ranch of 6,000 acres.

It is not necessary to set out at length or in any detail, except where mentioned, any of the various provisions of the contract. It is an ordinary lease contract with many provisions. The signatures were not all procured right away, but were later obtained, and the contract was filed with the Commonwealth Bank & Trust Company, in San Antonio, on September 27, 1924. Appellee at the time had practically no funds with which to carry out his contract, having only about $2,000 in his wife's name in a savings account, but he undertook the contract with the expectation of forming a company and selling stock to former associates in Seattle, Wash. About two weeks after the signing of the contract, the appellee and his associates prepared and filed a declaration of trust organizing a company which was called the Atascosa Oil & Gas Company, and sold stock in Seattle, thereby raising money with which to carry out his contract.

When appellee went to Seattle, he left a driller and an associate to begin drilling upon the premises before the expiration of the 70 days given under the contract. The well was begun the latter part of September, 1922, and was drilled to a depth of 375 feet, when the rig was moved to a new location. On the second well appellee drilled down to a depth of 781 feet; and in this well a flow of artesian water was encountered, and appellee abandoned this location, leaving the well to the appellants, they paying for the casing. On July 25, 1923, appellee moved to the third location. After drilling for 20 months he arrived at a depth of 1,689 feet, when he could go no further in the third well. It was represented to appellants by appellee that a cable rig was not suitable for the drilling and that a rotary rig would have to be secured. For several months an attempt was made to hire a rotary rig, as at this time appellee was unable to buy a rotary rig for the reason that he had exhausted all of his available funds.

Appellee had some negotiations with appellants with reference to making a contract with the Southern Natural Gas Company to drill a well on the lease, and on the 2d of June, 1925, appellee wrote a letter, addressed to himself, to be signed by appellants, containing the consent of appellants for appellee to enter into a contract with the Southern Natural Gas Company to drill a well upon the land included in the lease. The appellants refused to sign the instrument and refused to give appellee authority to make a contract with anybody else to drill on the land. On June 13, 1925, the appellee, without the consent or knowledge of appellants, executed an assignment of his contract to 2,400 acres to the Atascosa Oil & Gas Company, a corporation, a subsidiary of the Southern Natural Gas Company, in consideration of that company drilling a well to 2,500 feet.

The Atascosa Oil & Gas Company moved their rig upon the land and spudded in their well—began drilling on September 16, 1925. Appellants, having observed that it was not

the Southern Natural Gas Company that was drilling and that the appellee was proceeding under his original contract instead of making a new contract, caused their attorneys, Clamp & Searcy, to write·a letter to appellee advising him that they no longer recognized the contract and requested him to vacate the premises. Appellee replied that he did not agree with them that the contract had been breached, or that his lease had expired. Thereupon appellee wrote to the Atascosa Oil & Gas Company, sending them a copy of the letter from appellants' attorneys, to which the Atascosa Oil & Gas Company replied, stating that under the circumstances they would not proceed further with the drilling, and soon vacated the premises.

There is much testimony introduced and considered by the court on the question of estoppel, waiver, etc.

■ It would serve no useful purpose to go into, set out, and discuss the testimony; but from a careful reading thereof we do not think there was sufficient legal testimony to forfeit the contract, for at the very moment it was forfeited appellee had placed himself in a position to perform, because appellants knew and encouraged the drilling of well No. 4, by the Atascosa Oil & Gas .Company, and at no time raised any objection thereto or took any steps to prevent the drilling of said well, but encouraged it in every possible way up to the time they decided to end the contract on the ground that they did not acquiesce in the drilling of well No. 4, under the contract between appellee and the Atascosa Oil & Gas Company, guaranteed by the Southern Natural Gas Company.

Question No. 5, submitted by the court to the jury, was not supported by appellants' pleading and was not justified by any pleadings, and hence is an immaterial issue.

The defense as pleaded was that in May or June, 1925, Grady Peeler told appellee that, as he had not complied with the contract he was going to cancel the lease. Appellee admitted he was unable to proceed with the contract and requested further time to secure some one else. On June 2, 1925, appellee presented to appellants an instrument in effect a renewal lease, which appellants refused to sign, and refused to agree that the Atascosa Oil & Gas Company should enter upon or drill on the premises. stating he would meet appellee in San Antonio on a certain day, which appellee agreed upon. Appellee did not consult appellants any more, but caused, with the knowledge of appellants, the Atascosa Oil & Gas Company to move a rig upon the premises. The appellants did not first object because they believed appellee would keep the appointment and agree upon a new contract, but as time passed appellants concluded that appellee did not intend to make a new contract but was working under the old one.

The jury found that appellants did not acquiesce in the contract between Atascosa Oil & Gas Company, guaranteed by the Southern Natural Gas Company. They found in answer to question 31 that there was no understanding or agreement made about May or June, 1925, between appellee and appellant Grady Peeler to the effect that appellee had not complied with his oil and gas contract lease, and that appellee was unable and would not proceed with said lease contract.

In answer to question No. 32, the jury found that it was not understood and agreed between appellee and Grady Peeler that at the time the Atascosa Oil & Gas Company entered upon said leased lands after June 13, 1925, a new contract would be entered into before the Atascosa Oil & Gas Company would have the right to operate on said land. The lease agreement permitted either party to assign such contract with the Atascosa Oil & Gas Company without an agreement with appellants thereto, and it was not incumbent that appellee should get the consent of appellants.

An assignment was made to the Atascosa Oil & Gas Company long before the eviction, and as long as appellee prosecuted the contract through such assignment, there was no eviction authorized.

■ The court was not permitted to render a judgment non obstante veredicto, where special verdicts have been found by juries, whether there is evidence or not. Johnson v. Breckenridge-Stephens Title Co. (Tex. Com. App.) 257 S. W. 223; Battle v. Wolfe (Tex. Civ. App.) 283 S. W. 1073.

Up to September 27, 1924, which included the boring of two wells, appellee exercised reasonable diligence in the prosecution of drilling for oil and gas. The evidence shows that prior to that time the appellants neither by their conduct nor by any statement directly waived any right they may have had.

Up to the time of the execution of the contract with the Atascosa Oil & Gas Company, there was no absolute conclusive work or any one separate and·distinct act that the defendants could have objected to. It was a case of continued delays and conduct consisting of a series of acts and omissions all more or less connected together, and so there would be a far less duty to protest or object than there may have been in the case cited.

■ It is not proper for the court to submit to a jury an issue of fact when the uncontradicted evidence establishes the fact. There is nothing in the testimony that plaintiff thought they had .waived their rights, though it is claimed that defendants acquiesced in the unavoidable· delays.

■ In issue No. 3 the question of acquiescence was submitted generally. In No. 5 the issue was a specific inquiry as to acquiescence during a part of the term. The jury finding that there was no acquiescence, in

response to question No. 5, was a specific finding; hence no judgment should have been rendered. When a jury makes a specific finding at variance with a general finding, the general finding must be disregarded. St. Louis S. W. Ry. Co. v. Miller & White (Tex. Civ. App.) 176 S. W. 833.

The only issue of fact as to what might, under the pleadings and evidence, have been acquiescence in law, was that Peeler, knowing of the contract of plaintiff with the Atascosa Oil & Gas Company, permitted it to come upon appellants' lands and begin operations and thereby estopped themselves from thereafter complaining. Since the issue of fact was found against the plaintiff, there was no disputed issue of fact for the jury, and their finding that defendants did acquiesce in the delays is a finding of law upon undisputed facts.

We do not think any good result would be obtained now by any discussion of the expenses and damages suffered, as no such issue is now considered and passed upon.

In view of the conduct of the parties in dealing with the contract, delays and the acquiescences, we are not satisfied to let the judgment for forfeiture stand.

For the reasons stated, we reverse the judgment and remand the cause for another trial.