### SMITH v. PEELER et al.

### No. 1377—5542.

Commission of Appeals of Texas, Section A.

June 25, 1930.

Matlock & Kelly, of San Antonio, and Ocie Speer, of Austin, for plaintiff in error.

Clamp & Searcy, C. J. Matthews, and Terrell, Davis, McMillan & Hall, all of San Antonio, for defendants in error.

SHARP, J.

Albert C. Smith instituted this suit in the district court of Bexar county, against Alice Peeler et al., alleging that on or about the 17th day of July, 1922, the defendants entered into an agreement with the plaintiff whereby the defendants were to deliver to plaintiff an oil and gas lease on 6,000 acres of land known as the Peeler Ranch, located in Atascosa county, and, in consideration for said lease, the plaintiff was to drill certain wells thereon; that in course of time by reason of said agreement or contract, he did drill certain wells thereon. Plaintiff further alleged that on or about the 13th day of June, 1925, he entered into a written agreement with the Atascosa Oil & Gas Company, by which plaintiff assigned to the said gas company a portion of the property covered by the oil and gas lease executed to plaintiff by defendants, and that said gas company placed on said premises a derrick and other property and began to drill a well thereon; that before the well was completed the defendants forfeited the lease or contract they had made with the plaintiff and treated the contract as null and void and demanded possession of the premises, and that the gas company discontinued the drilling of the well thereon and removed their property off the premises. Plaintiff further alleged that he had spent much time and expended certain sums of money in undertaking to carry out the lease; that he further claims that the drilling rig, tools, equipment, etc., cost the sum of $3,219.89 and that the casing, pipe, cable, etc., cost the further sum of $5,957.47, making a total amount of money spent and the reasonable value for his services and time the sum of $28,461.34. In addition thereto, plaintiff asks for the sum of $250,000, the value of the leased premises at the time of the breach of the contract and for the sum of $100,000 in exemplary damages, etc.

The defendants answered with a general demurrer, special exceptions, general denial, and special answer. Upon the conclusion of the testimony, the defendants made a motion for the court to instruct the jury to return a verdict for the defendants, and stated that plaintiff had filed the suit for himself individually; that, after he had testified upon the trial and for the first time, the defendants learned that the plaintiff was not the sole owner of the subject-matter involved in this suit, but that he had organized other

companies and had sold stock therein, and that at the time the lease was executed the plaintiff had very little money upon which to operate, and that the undisputed record shows that there were many other persons who were interested in the companies organized by plaintiff and who had furnished practically all of the money to plaintiff for the purpose of buying rigs, tools, cables, equipment, etc., and that plaintiff had not alleged that he was suing for them in any capacity, but was suing for himself individually, claiming to be the owner of the property and entitled to the sums of money claimed in his petition; that the defendants had no opportunity of knowing these facts before plaintiff had testified upon trial, and requested the court to instruct the jury to return a verdict for defendants, and the court overruled this motion and submitted the case to the jury upon special issues. Based upon the findings of the jury to special issues submitted to them, the court rendered a judgment in favor of plaintiff against defendants for the principal sum of $27,909.29, with interest thereon from the 16th day of September, 1925, at the rate of 6 per cent. per annum, making the aggregate amount of the judgment rendered in the sum of $33,378.84. The case was appealed to the Court of Civil Appeals for the Fourth Supreme Judicial District at San Antonio, and the judgment of the trial court was reversed. 18 S.W.(2d) 938.

We will refer to the parties in this suit as plaintiff and defendants as they were described in the trial court.

It is urged by the defendants that the trial court erred in rendering judgment in favor of the plaintiff, because of a defect of parties and because of material variance in the pleadings and proof. It is contended that the pleadings show no one except plaintiff to be interested in the matters in controversy, whereas the testimony developed showed him to have only a small interest therein, the greater portion of the interest being owned by other persons, and that plaintiff did not undertake to sue for the other persons interested in the subject-matter in this suit, either in their name or as their representative.

The pleadings filed by plaintiff show that he instituted this suit for himself individually, and nowhere does he purport to undertake to maintain this suit as the representative or for the benefit of those who, according to his own testimony, have an interest in the subject-matter of this litigation. Attached to this petition is a list of items that he claims judgment for. Among the many items listed therein, which will not be set out in detail, is the purchase cost of a drilling rig, drilling tools, casing, pipe, cable, wages paid to drillers and helpers, and many other items not necessary to enumerate herein; part, if not all of them, being paid for out of the funds derived from the sale of stock in the various companies organized.

The plaintiff while upon the witness stand testified upon this aspect of the case substantially as follows:

(a) That the first thing he did after procuring the lease agreement with defendants he went to Seattle to arrange with his friends there for finances for drilling the well. That he formed a company composed of himself, Mr. Cox and others to drill Well No. 1.

(b) That he organized the Atascosa Oil & Gas Company and raised money through his friends by the sale of stock issued at Seattle. That the records of the company were kept in Seattle, and that from various sources he received from the stockholders in round numbers the sum of $22,000 during the time he was drilling the three wells, and that this sum included therein every sale of stock, etc.

(c) That, when he returned from Seattle, he continued to receive money as he needed it. That some of the checks were signed by Cox as president and some were signed as trustee. That a man by the name of Brockway bought out Cox's interest, and that Cox, Griffiths, and plaintiff had about 5 per cent. interest in the enterprise, altogether about 15 per cent. of the stock. That the Atascosa Oil & Gas Company was a declaration of trust with a capital stock of $50,000.

(d) Plaintiff was operating under A. C. Smith trust account. His friends had in Seattle formed another declaration of trust company, and he handled it for them. The name of this company was the Texas Cosa Declaration of Trust. That plaintiff knew all the stockholders or people who bought stock, and that they numbered probably thirty or forty. That about $22,000 worth of stock was sold, and that the account was carried under the name of the trust account, and that $1,500 that was raised by plaintiff's associates was to purchase the rig. That the Texas Cosa people provided plaintiff with $7,500 that went into well No. 3, but that the total fund was about $22,000 that plaintiff spent in connection with all the wells, which represented all the funds that plaintiff received from the Atascosa, Texas Cosa, and the trust account.

(e) The evidence is undisputed that the plaintiff used the funds of money paid him by the stockholders and deposited in the bank or banks at San Antonio as a trust account and was checked out by checks given by A. C. Smith on said trust account, and that he paid out of said funds for the rig, cable, tools, equipment, and many other items mentioned in the list for which he sues.

(f) The evidence is undisputed, as testified to by plaintiff, that from time to time during the time he was drilling the wells on the lease acquired from the defendants he sent to the various stockholders interested in the com-.

panies notice as to what was being towards carrying out the plans for drilling wells on the lease.

It is a well-established rule in this state that, when it appears that the interest in a suit is joint, all the parties interested therein, to be in any way affected by the decree or judgment sought to be obtained, ought, if known, to be made parties plaintiff or defendant in the suit, unless the number render it impracticable, or that under the facts shown the plaintiff has a right to maintain the suit as trustee or for the use and benefit of those entitled to an interest therein.

The record does not bring this case under the foregoing rule; on the contrary, it is shown that the plaintiff claims the entire interest involved herein, and, in our opinion, this case falls under the rule hereinafter stated, which is supported by the text-writers and decisions of the various courts.

In Townes' Texas Pleading, in discussing suits for damage to personal property, that author lays down the following rule: "Here the same principles are applied as in similar suits regarding real estate. The plaintiff, if he is sole owner, is entitled to recover the entire amount of injury; if he is a co-owner, the defendant could by making the defense at the proper time and in the proper way, have the damage apportioned, and the plaintiff would recover only his pro rata share. If no such defense was made and the full amount of the damage was recovered, the wrongdoer would not thereby be protected from liability to the other co-owners for their respective shares." Page 279.

Again he says: "In suits for tort on property where damage is sought to be recovered all parties owning the property should be plaintiffs." Page 283.

In the case of Waggoner v. Snody, 98 Tex. 512, 85 S. W. 1134, 1135, Judge Brown, in rendering the opinion for the Supreme Court, said: "Where a joint owner of personal property brings a suit for damages thereto without joining the other owner or owners, he cannot recover the whole value of the property, or the damages which may have been inflicted upon it, but will be entitled to recover only his proportionate part of such value or damages, notwithstanding defendant has not pleaded the nonjoinder in abatement. May v. Slade, 24 Tex. 209; Houston & T. C. Ry. Co. v. Knapp, 51 Tex. 592; Dolson v. De Ganahl, 70 Tex. 622, 8 S. W. 321; Johnson v. Richardson, 17 Ill. 304, 63 Am. Dec. 369; Wheelwright v. Depeyster, 1 Johns. [N. Y.] 485, 3 Am. Dec. 345; Frazier v. Spear, 2 Bibb [Ky.], 386; Webber v. Merrill, 34 N. H. 208. The plaintiff's right being to recover his proportionate part of the damages, in order to establish that right it devolved upon him to show with reasonable certainty the extent of his interest in the property."

In the case of King et al. v. Commissioners' Court et al., 10 Tex. Civ. App. 114, 30 S. W. 257, 258, the court says: "We believe, however, it is the practice, even of appellate courts, to take notice of the absence of indispensable parties, and to remand the cause, in order that they may be joined. This is the course which has been pursued by our supreme court in partition proceedings, in which it has said: 'It is a general rule in equity, subject to but few exceptions, that all persons interested in the subject-matter of the suit must be made parties to it. * * * And even though no objection was or could have been made to the petition, when, in the course of the trial, it became apparent that there were necessary parties who were not before the court, it should have stopped the case, and required them to be brought in, before making a decree for partition.' Channel Co. v. Bruly, 45 Tex. 8. In Beach's Modern Equity Practice (section 78) it is said: 'If the omitted parties are merely formal, the court will be indisposed to listen to the objection at the hearing, and, if it can properly do so, will dispose of the case upon its merits, without requiring such formal parties to be joined. But if a suitable decree cannot be entered, for want of an indispensable party, the court may at the hearing take notice of the fact, and direct the cause to stand over, that such new parties may be added, or dismiss the bill without prejudice; or the appellate court may, in its discretion, if it cannot make a decree which will finally and properly dispose of the subject-matter of the controversy in the absence of a party, remit the cause for the purpose of bringing him in.' "

In the case of Kerrison, Assignee, v. Stewart et al., 93 U. S. 155, 160, 23 L. Ed. 843, the Supreme Court of the United States, says: "It cannot be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position; not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust (Shaw v. Norfolk County R. R. Co., 5 Gray [Mass.] 171; Bifield v. Taylor, 1 Beat. 91; Campbell v. R. R. Co. [Fed. Cas. No. 2366] 1 Woods, 376; Ashton v. [President, etc., of] Atlantic Bank, 3 Allen [Mass.] 220); or to one by a stranger against him to defeat it in whole or in part. Rogers v. Rogers, 3

Paige [N. Y.] 379; Wakeman v. Grover, 4 Paige [N. Y.] 34; Winslow v. M. & P. R. R. Co., 4 Minn. 317 [(Gil. 230), 77 Am. Dec. 519]; Campbell v. Watson, 8 Ohio, 500. In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party."

In our judgment the foregoing contention should be sustained.

Since this case will be reversed and remanded for a new trial, we forego a discussion of the other matters involved in this suit, because they will not likely arise upon another trial.

We therefore, for the reasons herein stated, recommend that the judgment of the Court of Civil Appeals reversing and remanding this case for another trial be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.