MILLER v. WYRICK.

No. 2949.

Court of Civil Appeals of Texas. Beaumont.

July 9, 1936.

Rehearing Denied July 20, 1936.

Sewell, Taylor, Morris & Garwood, of Houston, for appellant.

Jack U. Scarborough and W. O. Seale, both of Lufkin, and Seale & Thompson, of Nacogdoches, for appellee.

COMBS, Justice.

Appellee, J. D. Wyrick, as plaintiff, filed this suit in the district court of Angelina county against appellant, J. D. Miller, as defendant, to recover damages for personal injuries sustained by him when his automobile truck collided with a truck owned and being operated at the time by the defendant. The collision occurred on a paved highway about two miles south of Lufkin, in Angelina county, on March 29, 1935. The two trucks were approaching each other from opposite directions, and the collision was practically head-on. Plaintiff was severely and painfully injured; his face and scalp were lacerated, his lip being split open, requiring a number of stitches to close the wound; a number of teeth were knocked out or broken off; the lower jaw was injured; his body was severely bruised, and there was an injury to the lumbar region of his back, which, according to the testimony of the physician who treated him, will prevent him doing any work in the future which requires heavy lifting. The physician testified that the plaintiff has a partial permanent disability of 25 to 30 per cent.

Each party contended that the other was driving on the wrong side of the road and the evidence bearing upon the issues of negligence of the defendant and contributory negligence of the plaintiff was highly conflicting. Twenty-six special issues were submitted to the jury, in response to which they found that neither party was driving at an excessive rate of speed. They convicted the defendant of negligence, proximately causing the accident, in driving on the wrong side of the road and in failing to keep a proper lookout. They acquitted the plaintiff of contributory negligence, and further found that the collision was not the result of an unavoidable accident. Plaintiff's damage was assessed at $2,175, for which judgment was entered on the verdict.

The defendant has appealed from that judgment.

The defendant filed a plea of privilege to be sued in Harris county, the county of his residence, which plea was in due time controverted by plaintiff. Upon a hearing of the plea the trial court overruled the defendant's general demurrer to plaintiff's controverting affidavit and overruled the plea of privilege. It is not disputed that plaintiff's cause of action was based upon a trespass committed in Angelina county, but it is insisted that the controverting affidavit was insufficient. The assignment is overruled. While plaintiff's petition is not made a part of the controverting affidavit by reference, the essential facts pleaded by him are set forth in the controverting affidavit. The controverting affidavit and the evidence introduced in support of it were sufficient to show that venue was maintainable in Angelina county under subdivision 7 of article 1995, Vernon's Ann.Civ.St.

Appellant insists that the trial court committed reversible error in not properly instructing the jury with reference to the burden of proof. Each and every issue was framed by the trial court, so as to properly cast the burden of proof, by beginning each with the approved formula, "do you find from a preponderance of the evidence," etc. But in the beginning portion of the charge the court stated: "This case will be submitted to you upon special issues, which you will answer from a preponderance of the evidence as you find the facts to be." It is insisted that the latter general instruction had the effect of leading the jury to believe that either an affirmative or negative answer would have to be based upon the preponderance of the evidence. We cannot agree with such contention. While it would have been preferable for the trial court to have omitted such general instruction, still we are unable to see how it possibly could have prejudiced the defendant's case in view of the manner in which the issues themselves were framed. Under any reasonable construction of the charge as a whole, the general reference to a preponderance of the evidence does not conflict with the burden of proof as placed by the issues, but is referable to and controlled by the specific placing of the burden of proof by the form of each issue. The cases of Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W. (2d) 658; Psimenos v. Huntley (Tex.Civ. App.) 47 S.W.(2d) 622, and Federal Surety

Co. v. Smith (Tex.Com.App.) 41 S.W.(2d) 210, cited by appellant were cases in which the issues were not so framed as to cast the burden of proof, and, therefore, the general instruction to answer the issues in accordance with the preponderance of the evidence was held not to supply the proper guide for the jury in answering the issues.

■ When the defendant was on the stand, his attorney asked him: "Q. About how far were the two trucks apart at the time you say that you suddenly swung your truck to the left? A. I did that just as they hit. The two trucks were running fifteen miles per hour—I judge fifteen or twenty—and just before they hit I seen I was going to have to hit him, and told my wife to brace herself, 'it looks like we are going to get hit.'" Plaintiff's counsel objected to the witness's declaration, "it looks like we are going to get hit," on the ground that it was self-serving, and the trial court sustained the objection. While we think the alleged declaration was res gestæ, still we are unable to see how its exclusion could have injured the defendant.

It was not disputed that the collision occurred, and the declaration was not reasonably calculated to prove or disprove any fact at issue in the case.

■ Appellant assigns error on the following argument of plaintiff's counsel: "It is our contention that Special Issue No. 1, down to and including Special Issue No. 8 should be answered 'yes'; that Special Issue No. 9 should be answered 'it was not the result of an unavoidable accident' and from Special Issue No. 9 clear on down to No. 26 should be answered 'no' and that Special Issue No. 26 should be answered $6300.00."

The specific objection seems to be that in the argument complained of the issues are referred to in groups, and that such grouping had the effect of indicating to the jury the effect of their answers. We know of no rule which requires counsel to argue the issues separately. The argument seems to be nothing more than a summation of the discussion of the evidence which had gone before. There was no appeal to the jury to answer the issues in a certain way in order to render a verdict for the plaintiff. The argument was not erroneous.

Appellant complains of the refusal of the trial court to grant his motion for new trial because of alleged misconduct of the jury. The first act of misconduct charged is that the jury, on retiring to consider their verdict and before answering any of the special issues, first determined that the plaintiff should recover, and before answering each issue proceeded to discuss the effect which the answers to that issue would have on the judgment to be rendered by the court, and then answered the issues so as to give the plaintiff judgment. On that point the juror J. O. Burgess testified, in substance, that when the jury went out to consider their verdict they first elected a foreman, C. E. Weeks; that the foreman read the court's charge, and also that some of the other jurors examined it, and they familiarized themselves with the charge. He then testified that before any issues were answered all of the jurors agreed that the plaintiff should have some damages, and that they proceeded to answer the issues so that the plaintiff would recover damages.

Among other things, he testified:

"Q. When you were ready to answer them then, you discussed if you answered it a certain way he would get damages and if you answered it the other way he would not? A. Yes sir.

"Q. Then in making your mind on that they would answer so as to give something? A. Yes sir.

"Q. You followed that all the way through? A. The foreman read out the issue all the way through, yes sir.

"Q. You did that all the way down? A. Yes sir."

The witness testified at some length, but the above quotation is sufficient to give the general nature of his testimony. The foreman, C. E. Weeks, was called as a witness by the plaintiff. The purport of Weeks' testimony was to the effect that when the jury retired that he personally was of the opinion that under the evidence Mr. Wyrick, the plaintiff, was in the right and Mr. Miller, the defendant, was in the wrong, and he testified that the jury first discussed the issues and he wrote down the answers on a piece of paper, not the answer sheet furnished by the court; he testified that the jury did not have any trouble getting together on the issues until they got down to the last one, the amount of the damages, and they stayed hung up on that issue until the afternoon of the following day. It seems that the answers were not transferred from the paper on which he first wrote them down until the jury reached complete

agreement, then the issues were read and the answers written down on the answer sheet furnished by the court. His testimony is apparently conflicting as to whether there was any discussion as to the effect of the answers. In two or three places he stated there was such a discussion, but he did not testify there was an agreement among the jurors, as charged. He testified that the issues were answered according to the evidence, and further: "Q. So if you could answer so as to carry out your intention—what you thought was right—then you would answer them in such way as to give Mr. Wyrick damages, assuming that you made the answers according to the testimony, but you answered these issues in the belief that Mr. Wyrick was entitled to damages and answered in such a way as to give him the damages? A. I didn't do so—only as the evidence bore it out."

In several places in his testimony he said that the issues were answered only in accordance with the evidence.

Another juror, C. G. Finley, was placed on the stand and examined concerning certain alleged misconduct, which we will refer to below, but was not questioned at all about the alleged agreement to so answer the issues as to give the plaintiff a judgment. Another juror, S. C. McAdams, denied that there was any such agreement, and said that if there was any such discussion he knew nothing of it.

■ We have very carefully considered the entire testimony of the jurors relating to the alleged misconduct. We think a question of fact as to whether the alleged misconduct occurred was raised which addressed itself to the sound discretion of the trial court, and he resolved it in favor of the plaintiff. Since the finding of the trial court in that regard has support in the record, we will not disturb it. Garcia v. Moncada (Tex.Com.App.) 94 S.W.(2d) 123; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.(2d) 770.

■ The testimony of the juror Burgess, that the jury agreed among themselves to so answer the issues as to give the plaintiff a judgment, and then proceeded to go down the list and do so, is contradicted in certain respects by the record itself. In the first place, the very first issue, issue No. 1, was answered not in favor of the plaintiff, but in favor of the defendant; the jury finding in response to it that the defendant was not driving his automobile at an excessive rate of speed. Again, it is not disputed that the jury was out from Saturday afternoon until Sunday afternoon before an agreement was reached on the verdict. We think it is also significant that eight jurors were not placed on the stand and examined with reference to the alleged misconduct. The record is silent as to why they were not called. Under the liberal practice obtaining in our state, where great latitude is allowed to institute an inquisition after verdict to determine what the jury did and what it discussed, we can perceive no reason for a litigant, who claims that a jury has been guilty of misconduct prejudicial to him, not being able to clearly and satisfactorily prove that such misconduct occurred, if it in fact did. On the whole, the record in this case evidences a fair trial. The answer of the jury to every issue is so well supported by the testimony that not a single assignment is made against the findings, and the amount of damages awarded is so obviously fair and reasonable, in view of the injuries to the plaintiff, that the appellant has made no complaint of it, and we think the judgment ought to stand.

■ Two other assignments complain of alleged misconduct, one being to the effect that the jury considered the probable amount of attorney's fee in fixing the amount of damages, and the other that the jury considered damages to the plaintiff's truck, which element of damage was not submitted to the jury by the court's charge. Suffice it to say that the testimony of the jurors shows, we think conclusively, that the jury did not consider such elements. There is testimony of a juror or two that some one asked, "how much you reckon the lawyer will get," and another juror spoke up, saying, "that's none of our business," which ended the matter. And another juror said that he had in mind that the plaintiff's truck was damaged. In the absence of proof of an overt act of misconduct which caused the jurors to give consideration to elements of damage not submitted in the court's charge, an inquiry will not be permitted to be made into the mental processes or reasonings by which a juror reached his verdict. Bradley v. Texas & P. Ry. Co. (Tex. Com.App.) 1 S.W.(2d) 861, 863.

Finding no error, the judgment of the trial court is in all things affirmed.