## PEGUES et al. v. DILWORTH.

### No. 3524.

Court of Civil Appeals of Texas. El Paso.

April 8, 1937.

Rehearing Denied April 29, 1937.

Jackson & Crawford, of Crystal City, and Boyle, Wheeler, Gresham & Terrell, of San Antonio, for appellants.

L. B. Cooper, of Cotulla, and J. W. Sutton, of Houston, for appellee.

WALTHALL, Justice.

This suit was brought by J. C. Dilworth, Jr., in the District Court of La Salle county, Texas, against S. S. Pegues and J. E. Baylor, individually, and as composing the partnership of Pegues & Baylor, against the Stockmen's National Bank in Cotulla, Texas, a banking corporation, as escrow agent for all parties in this suit.

The suit is based upon a certain cattle sales contract in writing and attached to and made a part of plaintiff's petition. The contract is made an exhibit in the petition and is substantially in words and figures as follows:

"Exhibit A.

"The State of Texas:

"County of La Salle:

"This Contract for the purchase and sale of cattle made and entered into this August 9th, 1935, by and between J. C. Dilworth, Jr. on the one part and Pegues and Baylor, a firm composed of S. S. Pegues of Zavala County, Texas, and J. E. Baylor of Dimmit County, Texas,

"Witnesseth:

"The said J. C. Dilworth, Jr., is the owner of eight hundred head of merchantable cows, some with calves, and a few two year old heifers and and bulls, now located the Huisache pasture, a subdivision of the Cammarron Ranch, in La Salle and McMullen Counties, upon which he has a lease expiring October 15, 1935, at 17 cents per acre per annum, payable quarterly in advance.

"The said Dilworth hereby sells and agrees to deliver to the said Pegues and Baylor, eight hundred of the above cows, two year olds and bulls, for and at the agreed price of $40.00 per head for cows, and $40.00 per head for two year olds and bulls, to be paid for in cash at the time and place of delivery.

"The above cattle are all branded ⟨J⟩ on right hip, except calves, which are to be thrown in with mothers without additional charge. Yearlings at $25.00 per head. This contract covers not to exceed 800 cows and such others as are in said pasture.

"This sale is subject to the following requirements of the said Dilworth, to-wit:

"(a) The said Dilworth agrees to first get a lease from the owner of the Cammarron Ranch to Pegues and Baylor, at a price of 17 cents per acre per annum, for a period of three years from its date, payable semi-annually in advance.

"(b) The said Dilworth agrees to deliver all of said cattle in such Huisache Pasture, free from ticks, and inspected by any authorized State cattle inspector, all cattle to be by said Inspector, "Scratched and passed" as clean.

The said Dilworth may continue to use the remaining portion of such Cammarron Ranch, except such Huisache pasture, until October 15, or longer if agreeable, but shall pay his pro-rata share of the lease for the acreage and time used by him.

"The said Pegues and Baylor hereby, with the execution of this contract, deposit in the Stockmen's National Bank of Cotulla, Texas, the sum of $5,000.00, which sum is to be held by said Bank in escrow, pending the fulfillment of this agreement.

"It is agreed that said sum is deposited in said Bank, in escrow, together with a copy of this contract, and if faithfully performed by the said Dilworth, such sum may be used by the said Pegues and Baylor in making final payment for the cattle hereby purchased by them. If, however, the said Dilworth faithfully performs his agreement, and the said Pegues and Baylor refuse to accept said lease and cattle, then such sum is to be forfeited to the said Dilworth. If the said Dilworth cannot or does not deliver said lease, acceptable to te said Pegues and Baylor, or if he fails to deliver such cattle free from ticks, as herein provided, then the deposit hereby made shall be returned to them, and this contract shall be void.

"If the said Dilworth can fulfill this contract and fails or refuses to do so, then and in that event he shall be liable to the said Pegues *an* Baylor for any and all damages suffered by them.

"The said Dilworth agrees to deliver the above lease, covering approximately 46,700 acres of land, and all cattle covered hereby, as contracted, within 30 days from this date.

"Witness our hands this August 9, 1935.
"J. C. Dilworth, Jr.
"Seller.
"S. S. Pegues
"Buyers
"J. E. Baylor.
"Witnesses:
"G. C. Jackson
"F. D. McMohon"

The petition alleged that the contract was incorrectly written by the writer who wrote the contract; that it did not express the mutual intent of the parties in the particulars stated, but was executed by plaintiff and defendants Pegues and Baylor under mutual mistake of facts as alleged. The petition then set out several provisions of the contract alleged to be mutually erroneous, and alleges that such mutual mistakes are material in connection with their contract, and affect their rights substantially thereunder. The court submitted to the jury the portions of the contract alleged to be mutually erroneous, and upon which the jury made findings; they are lengthy, and we omit stating them here, except one which we state at length, and which seems to be the basis of the contention here. It is as follows:

"C. In the second paragraph of said contract, the writer inserted the following provision after mentioning some cattle, 'Now located the Huisache pasture, a subdivision of the Cammarron Ranch, in La Salle and McMullen Counties,' upon which he has a lease contract expiring October 15, 1935 at 17 cents per acre per annum, payable quarterly in advance, when, in fact, such lease does not expire October 15, 1935, but on the contrary, expires on October 1, 1936, unless an option is exercised for another period of two years as provided therein. Plaintiff says that the date of the termination of his lease contract with the owner of the Washburn Ranch was a material consideration for the execution of the cattle sales contract as embodied in Exhibit A of Plaintiff's Original Petition herein and that he informed the defendants and their attorney, G. C. Jackson, who drew the same, that he had a lease running until October 1st, 1936, and had an option on the lease of said land for another period of two years at the price which the owner might then be offered by another tenant or tenants, but despite this disclosure of fact made by plaintiff to the defendants and their attorney, the latter erroneously fixed the date of the expiration of such contract of lease. In this connection, the parties thereto had and made a distinct, definite and clear understanding that the plaintiff would assign and deliver to the defendants the contract he then and there had with the owner of the Washburn Ranch and would exercise the option as provided for therein for another period of two years and would procure said option at and for the same price of seventeen cents per acre per annum, payable semiannually in advance. But, although, plaintiff and defendants, mutually one with another agreed and thoroughly understood each other in this respect, the writer of said contract in addition to the foregoing, erroneously inserted therein the following provision: 'The said Dilworth agrees to first get a lease from the owner of the Cammarron Ranch to Pegues and Baylor, at a price of 17 cents per acre per annum, for a period of three years from its date, payable semi-annually in advance.' The true and specific agreement was that the Dilworth lease was in full force and effect until October 1st, A. D. 1936, and contained therein an option provision for the extension of same for another period of two years until October 1st, 1938 upon the same terms and conditions as stated in the original lease, except the rental to be paid would be in an amount equal to the sum

then offered the owner of the ranch by other prospective tenants for said pastures. Plaintiff says he and defendants agreed one with another that he would guarantee his lease would not cost the defendants more than the specified seventeen cents per acre and if it did cost more, he would make good the difference in price. Further, it was mutually agreed between them that plaintiff would only be obligated to furnish the defendants his lease on what is commonly known as the Huisache, Quintenilla, Big Alamo, Little Alamo and West Green Branch Pastures, being the identical pastures called for in his lease and would not be obligated and bound to furnish a lease to them on any other portion of the Cammarron or Washburn Ranch. Plaintiff says the contract as written is vague, indefinite and uncertain as to the land on which a lease is to be delivered to defendants, but they mutually agreed that the pastures named above and called for in plaintiff's lease were and are the ones which he agreed and obligated himself to deliver a lease to. In writing the provisions above enumerated, the attorney for defendants was in error and in signing the same, plaintiff and defendants were mutually mistaken in the respects hereinabove alleged, their mutual several intentions, agreements and understandings one with another being as recited herein. Further in such written instrument, it is stated, 'If the said Dilworth cannot or does not deliver said lease "Acceptable" to said Pegues and Baylor, or if he fails to deliver such cattle free from ticks, as herein provided, then the deposit hereby made shall be returned to them, and this contract shall be null and void.' In this connection, plaintiff says such provision did not and does not represent the true and correct contract between the parties thereto as it was agreed between them that he would assign, turn over and deliver to them the contract he then and there had at and for the same price of seventeen cents per acre per annum, and would exercise the option granted in his lease for another period of two years so that the lease would terminate on October 1, 1938 and all provisions contained in his lease to be passed on to the defendants as assignees. In such respect, the term, 'Lease acceptable to te said Pegues and Baylor' is erroneous and the writer of such contract was entirely in error in inserting same and plaintiff and defendants were mutually mistaken as to same. Plaintiff says he asked the attorney for defendants, who drew the same, what he meant by this acceptable provision and he replied 'A lease at seventeen cents per acre', and by virtue of this explanation by the writer of the contract, he was wrongfully and fraudulently induced to sign same, the writer having explained that by the terms, 'A lease acceptable to Pegues and Baylor' meant and was intended to be a lease or the lease plaintiff then and there had but to cost defendants not more than seventeen cents per acre per annum; and this erroneous, wrongful and fraudulent misrepresentation caused and induced plaintiff to sign said contract."

Plaintiff then alleges that defendants Pegues and Baylor deposited in the defendant bank the sum of $5,000 to be held in escrow pending the fulfillment of the contract.

The petition alleges in detail that plaintiff at all times has been ready, able, and willing to do and perform all the obligations imposed upon him by their several agreements, and made a tender of said cattle to defendants, and did tender an assignment of his said lease, and did procure the consent of the owner of said ranch to make such assignment, and an extension of said lease for a period of two years at the same price of 17 cents per acre, but defendants refused to accept same, and refused to accept said cattle, and informed plaintiff that they would not accept the cattle or the lease and assignment.

Plaintiff prayed that the contract be reformed in the particulars stated, and that he have judgment upon the contract as reformed for the escrow $5,000, with interest, and that the Stockmen's National Bank be directed to pay to plaintiff the sum of $5,000 in satisfaction of plaintiff's judgment against it and to the extent of that sum of money in satisfaction of plaintiff's judgment against the other defendants, for costs of suit, and for relief, general and special.

Defendants Pegues and Baylor, individually, and as partnership of Pegues & Baylor, answered by demurrers, general and special, and by general denial. Defendants Pegues and Baylor further answered by way of cross-action and in making the written contract above stated a part of their cross-action, and allege that, as a condition precedent to the sale of the cattle as the contract set forth, the contract provided: "The said Dilworth agrees to first get a lease from the owner of the Cam-

marron Ranch to Pegues and Baylor at a price of seventeen cents per acre per annum for a period of three years from its date, payable semi-annually in advance"; that said contract further provided: "The said Dilworth agrees to deliver the above lease covering approximately 46,700 acres of land and all cattle covered hereby as contracted within thirty days from this date" (August 9, 1935); that Dilworth wholly failed to procure such lease within the time specified, and never tendered such lease as provided for in said contract. The cross-action then alleged the provision of the contract as to the deposit of the $5,000 in the bank to be held by the bank in escrow, and that said sum of money remains in the possession of said bank.

Defendants in the cross-action pleaded the portion of the contract providing that if Dilworth cannot or does not deliver said lease "acceptable to the said Pegues and Baylor," or if he fails to deliver the cattle free from ticks as in the contract provided, the said money deposit made, "shall be returned to them, and this contract shall be void."

Defendants in the cross-action allege the failure of Dilworth to procure said lease and demand on the bank for the return to them of the money deposit, and refusal of the bank without the consent of both parties. Defendants ask judgment against Dilworth and the bank for $5,000, interest and costs.

The defendant bank filed no answer.

On special issues submitted the jury found that Dilworth and Baylor had agreed at the time the written contract was executed that Dilworth was to assign his then existing lease on the pastures in question to Baylor and Pegues, and that Dilworth was to procure for Baylor and Pegues a two-year extension of his then existing lease at a price of 17 cents per acre per annum; the jury found that by mutual mistake of Dilworth on the one hand and Baylor and Pegues on the other, there was inserted the following provision of the contract, when the contract was finally written, to wit: "The said Dilworth agrees to first get a lease from the owners of the Cammarron Ranch to Pegues and Baylor, at a price of seventeen cents per acre per annum, for a period of three years from its date, payable semi-annually in advance"; the jury found that Dilworth asked G. C. Jackson (the lawyer who wrote the contract), before signing the contract in question, for an explanation of what was meant by the term "a lease acceptable to Pegues and Baylor"; the jury found that G. C. Jackson offered an explanation to Dilworth of what was meant by the term "a lease acceptable to Pegues and Baylor"; the jury found that the explanation of the term "a lease acceptable to Pegues and Baylor," offered by Jackson to Dilworth, was a concealment on the part of said attorney of the true purpose and meaning of said clause; the jury found that such concealment was material to the transaction then pending between Dilworth and Pegues and Baylor.

On the verdict as found the court rendered judgment in favor of Dilworth and against Pegues and Baylor in the sum of $5,000, with interest and costs, and judgment against the bank in the sum of $5,000, and that the bank pay to Dilworth said sum in satisfaction of the judgment against it, further that execution issue against Pegues and Baylor for any balance above the $5,-000, which the judgment stated to be $141.60 interest, and for costs, and interest on the judgment until paid.

Pegues and Baylor excepted to the judgment, gave notice, and prosecute this appeal.

## Opinion.

Appellants submit that, where a suit is not for rescission of a contract, but is for its reformation and enforcement as reformed, evidence of one party's understanding is insufficient, and before reformation can be decreed there must be competent evidence of a mutual mistake of fact as distinguished from a unilateral mistake. The proposition submits there being no evidence of any mutual mistake of fact at the time the written contract was executed, there was no issue of fact to be submitted to the jury, and it was error to overrule appellants' motion for an instructed verdict in their favor. Appellants also insist that where the contract is between three parties, a seller and two buyers, each buyer signing individually, the seller must plead and prove mutual mistake upon the part of all three parties, and, where there is no evidence of mistake on the part of one of the buyers, the buyers are entitled to an instructed verdict, the contract being indivisible, though the two buyers are partners.

The petition alleges that "Pegues and Baylor, individually, and for the partnership of Pegues & Baylor" signed the con-

tract sued upon. The contract itself shows that Dilworth sells and agrees to deliver to Pegues and Baylor the cattle described, and in all other parts of the contract it appears that Dilworth is the seller and Pegues and Baylor are the buyers, and the contract is so signed. The petition alleges that, by mistake of the writer who drew the contract, the contract did not express the mutual intent of the parties, in the particulars mentioned, but was executed by plaintiff and defendants under mutual mistake of facts. The facts alleged as not expressing the mutual intent of the parties are stated at length in the above statement of the nature and result of the suit. The part of the contract specially relied upon by appellants, and which appellants allege in their cross-action Dilworth wholly failed to perform is as follows: "The said Dilworth agrees to first get a lease from the owner of the Cammarron Ranch to Pegues and Baylor at a price of seventeen cents per acre for a period of *three years from its date*"; and "the said Dilworth agrees to deliver the above lease covering approximately 46,700 acres of land * * * within 30 days from this date," and which date the contract fixes as expiring on October 15, 1935.

Appellee alleges that such lease does not expire on October 15, 1935, but on the contrary it expires October 1, 1936, unless an option is exercised for another period of two years, as provided therein, and so informed appellants and their attorney, but despite this disclosure said attorney erroneously fixed the date of the expiration of the lease as stated. Appellee further alleges that he had a definite understanding that appellee would assign and deliver to appellants the lease contract he then had and would exercise the option provided therein for another period of two years, and at the same price per acre, appellants' attorney erroneously inserted therein the provisions above copied from the contract providing that Dilworth should provide a lease to the land for a period of three years, and acceptable to Pegues and Baylor.

There is no doubt from the evidence but that Dilworth as the seller and Baylor as buyer, on several occasions before the written contract was executed, discussed among themselves the terms of the trade or contract, and agreed as to what the seller and the buyer each should do. The evidence shows, we think, that Baylor fully understood that the lease held by Dilworth had the sale feature in it, and in their parol agreement Baylor agreed to accept an assignment of the lease with the sale feature. The evidence does not clearly show that Pegues knew of the sale feature in the lease then held by Dilworth.

■ Evidently the act of buying cattle and acquiring land by lease or otherwise was within the scope of the partnership of Pegues & Baylor. The general rule in partnership affairs is that each partner is, by legal implication, the agent of each in respect to partnership affairs, acting as principal for himself and as agent for the other.

■ When all of the facts incident to the contract had been understood and agreed to between Dilworth and Baylor, Baylor acted for himself and Pegues, prior to the actual execution of the written contract, and if, in putting the prior agreement into writing, a material fact or facts not previously agreed to, but directly contrary to what was previously agreed to, was put into the writing, the facts of the parol agreement would constitute the contract, where the parties had not agreed as a part of the contract that the parol agreement should be reduced to writing; but, where they had agreed, as a part of their agreement, that the oral agreement should be embodied in a formal writing and signed by them before a binding agreement is consummated, the writing would control. But where there is such agreement there is no binding agreement until this has been done. Joske v. Pleasants, 15 Tex.Civ.App. 433, 39 S.W. 586 (writ refused); 10 Tex.Jur. pp. 54, 55, 56. We have not found such agreement in the evidence.

■ We may well assume that the parties intended to reduce to writing the material terms of their oral agreement, and, where such was not done, but terms were embraced therein directly contrary thereto, and destructive of what had been agreed to, the writing may be reformed and enforced as previously agreed. Especially would that be the law in the instant case where the writing provides that the lease to be assigned and delivered by Dilworth to Pegues and Baylor must be acceptable to them or the written contract would be void. When such term had not theretofore been agreed to, and when Dilworth asked an explanation of its meaning of the attorney writing the

564

contract, and in the presence of Pegues and Baylor, and an explanation then given that was not the real legal meaning and effect of the writing that the lease to be delivered must be "acceptable to the said Pegues and Baylor," but did have the legal effect to provide that Dilworth should deliver a lease different from the lease he then had, the terms of which they knew, such provision also had the legal effect, we think, of requiring Dilworth to deliver a lease free of the sale provision in the lease to one "for a period of three years," a lease which the appellants knew Dilworth did not have.

In the closing argument counsel for appellee said, "Our theory of the case is that all questions should be answered in the affirmative." The argument presents no reversible error. Dallas Ry. & Terminal Co. v. Bankston, 51 S.W.(2d) 304, by the Commission of Appeals, and the cases there referred to.

We have concluded the record shows no reversible error.

The case is affirmed.