## BARRINGTON et al. v. DUNCAN et al.
### No. 11404.

Court of Civil Appeals of Texas. Galveston.
May 28, 1942.

Rehearing Denied June 18, 1942.

A. R. Rucks, of Angleton, and Earnest, Bondies & Flahive and Strasburger, Price, Holland, Kelton & Miller, all of Dallas, for appellants.

Carlos B. Masterson, of Angleton, and Sewell, Taylor, Morris & Connally, of Houston, for appellees.

GRAVES, Justice.

This appeal is from a $10,319.50 judgment in appellee Clarence L. Duncan's favor against appellants (with $1,535.33 thereof allocated to the intervening Insurance Association), entered by the district court of Brazoria County upon the verdict of a jury in response to special issues submitted, the stipulations of the parties on the trial, and the independent findings of the court itself, recited to have been from "the undisputed evidence"; the amount was so allowed as for reasonable compensation to such appellee for personal injuries to himself, found by court and jury to have been visited upon him by the negligence of appellants in a night-time collision on the public highway in Brazoria County between a truck being driven north by appellee and one belonging to both appellants, but being driven south on the occasion in question by appellant, Gus Barrington.

By the mutual concessions of both sides, the controlling issue on the facts as to the cause of the collision was as to which side of the black line running down the center of the highway it occurred on—each driver charging the other with coming over on his own wrong side of the road and thereby bringing about the tragedy.

With the basic issue of fact so mutually fixed as the theory of the submission of the cause to the jury, it was literally cross-examined by a great number of inquiries from the court, what are deemed to have been its most material findings being these:

The appellant, Gus Barrington, was guilty of negligence which proximately caused the collision, in (1) driving his truck to the left of the center of the highway; (2) operating his truck at an excessive rate of speed; (3) failing to have his truck under reasonable control; (4) failing to turn his truck to the right immediately prior to the collision. He did not fail to slacken the speed of his truck as it approached the appellee's truck. The appellee was in a position of peril immediately prior to the collision, and the appellants' truck driver actually discovered the perilous position of the appellee prior to the collision, and realized that in reasonable probability he would not extricate himself from such position of peril, and he made such discovery and realization in time, so that by the exercise of ordinary care he could have avoided the collision, but he failed to exercise such care, and such failure was a proximate cause of the collision. The jury exonerated the appellee from any contributory negligence, and found further that the appellants' truck driver was not in a position of peril immediately prior to the collision.

Appellants, in this court, attack none of the jury findings as having lacked support in the testimony, so that they must be accepted as the established facts in the controversy over the field they so cover.

Appellants' points, as presented here for a reversal, in substance, are these:

(1) That the $10,319.50 verdict and judgment was so excessive, under the underlying facts, as to show that the jury was influenced by improper motives in awarding that much;

(2) That the court's permitting appellee Duncan "to testify repeatedly, over objections of the appellants, that he had a wife and family * * * for the purpose of showing the mental anguish the plaintiff suffered as the result of his injuries because he had a wife and family", was reversible error;

(3) The jury's answer to special issue No. 42, finding that appellant's driver was at the time of the collision acting under an emergency, was in irreconcilable conflict with all of the jury's "answers of negligence and proximate cause of appellants, as contained in issues 1 to 3, inclusive, 6 to 10, inclusive, and 14 to 18, inclusive";

(4) The court reversibly erred, (a) in permitting the appellee Duncan to testify, over objection, that he knew his compen-

sation insurance company would be reimbursed for whatever compensation it had previously paid him out of whatever judgment he recovered against a third party; (b) appellants should have been granted their requested new trial because of improper conduct of the jury during their consideration of the case, the evidence having conclusively shown that during their deliberations there was a discussion as to whether or not appellants carried insurance—one statement being made to the effect that they had to have a $10,000 policy before they could operate;

(5) The trial court reversibly erred in permitting improper and prejudicial arguments to be made by the appellee's attorney to the jury in each and all of these particulars, to-wit: (a) That defendant, Gus Barrington, had brought some witnesses to the courtroom and had them sworn, but had not offered them, they being obviously as available to the appellee as to the appellants; (b) in telling the jury in his closing argument that the appellee's compensation-insurer was playing second fiddle in the suit, and "so far as counsel was concerned, the jury could throw the Texas Employers' part of the case right out of the window", such improper statement tending to impress the jury that it could find in favor of appellee Duncan and not in favor of the compensation-insurer, "although under the law no such thing was possible"; (c) such counsel's suggesting to the jury, in his closing argument, that appellants' driver, Gus Barrington, "was drunk on the occasion of the accident, although there was no evidence to sustain any such charge"; (d) such counsel's informing the jury—in his closing argument—of the legal effect of their answers, by telling them that appellants' defensive issues from 19 through 40 "were inquiries from the court as to whether or not the appellee Duncan should be held responsible for the accident"; (e) such counsel's appeal to the sympathy or bias of the jury, in his closing argument, "by telling them that they with one stroke of the pen had to do everything for the appellee Duncan that he was deprived from doing for himself, that they alone could pay him, and that they alone had the chance to pay the debt that some one owed him in the verdict they were about to return, and that he was at their mercy."

This court fails to see eye-to-eye with appellants in any of the criticisms that are leveled at the trial court's action, under the facts presented by this record; on the contrary, with the cause of the collision having so been uncontrovertedly determined to have resulted from the appellants' negligence in all the particulars so found by the jury, no disturbance of that determination can be properly made here, unless some one or more of "the errors of law" so complained of against the trial court are found here to have amounted to such a denial of the rights of the appellants as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment below.

When the settings under each and all of the challenged actions are taken into consideration, this court is unable to reach the opinion that any one of them had such prejudicial effect.

 The claim for excessiveness in the verdict is obviously inept, when the extent of the injuries so inflicted upon the 28-year-old appellee are taken into consideration; prior to the accident he was an able bodied truck driver, whereas after it, up to the time of the trial, he had been unable to do any hard work, could not drive a truck, and was too weak even to lift his little boy, the only work he had been able to do was answer the telephone and sweep out a two-room office; further, that he had received "a fractured skull, extending 'up through for a distance of three or four inches, back up through the center', and a fracture of the fifth cervical vertebra, a broken neck, and possibly 'a fractured rib or two', with numerous cuts and bruises about him and a laceration over his left eye, with the left side of his face torn and swollen"; and that, for the future, "the very thing he could least do" would be to turn his head to the side, or back, in operating a truck or automobile, which was his established occupation before his injury", because of a broken and permanently stiff neck.

The verdict returned in such circumstances does not shock the conscience of this appellate court.

 Appellants, it is thought, overstate what the record shows, in their insistance that appellee's counsel "repeatedly injected into the case the fact that he had a wife and family"; the sole reference to his marital status appearing to have been the appellee's statement that his wife was present at the hospital when he first came to himself

from the state of unconsciousness he was knocked into by the accident; that it hurt him to move and that his wife helped him to move, nursed him at home, helped him bathe his injured eye, and that she was unable to appear in court as a witness. It is true that in describing his physical state, he further incidentally testified that he was still so weak that he was unable to lift his little boy, but appellants appear to have made no objection to such last statement.

Moreover, it further appears that appellee's counsel did not persistently insist that such testimony from him was admissible as showing the mental anguish he went through over his wife and family, but that, in replying to an inquiry from the court as to the purpose of such testimony, his counsel made to the court and not to the jury substantially this statement: "Your Honor, we are offering this testimony for the purpose of showing the mental anguish that this man went through on account of this injury, and we offer it further for the purpose that hereafter in the testimony it may develop that his wife rendered treatment to him from time to time, and I don't see how I can try this case and keep that fact from the jury." To that statement, it appears that the appellants made no objection at all at the time.

Under these conditions, this court concludes that no reversal should be ordered on this score; Rule 434, Texas Rules of Civil Procedure; Burrell Engineering & Const. Co. v. Grisier, 111 Tex. 477, 240 S.W. 899; Weatherford, M. W. & N. W. R. Co. v. Thomas, Tex.Civ.App., 175 S.W. 822, writ refused; Galveston, H. & S. A. R. Co. v. Summers, Tex.Civ.App., 278 S.W. 881; Roberts v. Nowlin, Tex.Civ.App., 9 S.W.2d 69.

■ There was no such irreconcilable conflict between the jury's answer to issue 42, to the effect that Gus Barrington was acting under an emergency at the time of the collision, and the others convicting him of all the specific acts of negligence, enumerated supra, as should destroy the verdict.

In the first place, it is plain to this court that the answer to issue 42 should be disregarded, because no such issue was raised by the evidence, the appellant, Gus Barrington, himself having excluded it by his own direct and uncontroverted testimony that he had had a full view of appellee's truck from the time he first saw it, two or three hundred yards ahead of him, until the collision—that it was on appellant's own side of the highway and remained there all the time until the cars struck, that he himself could have gone to his right, but deliberately took the chance of turning to his own left, and in that way getting around the appellee's truck on the other side; wherefore, there could have been no such sudden unexpected danger confronting him in that respect as gave rise to the defense of sudden emergency in his favor. Sproles v. Rosen, Tex.Civ.App., 47 S.W.2d 331; affirmed Tex.Com.App., 84 S.W.2d 1001; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731.

In the second place, the other findings with which this answer is claimed to have conflicted were each and all convictions against that appellant of specific acts of negligence, which, under our decisions, would control such a general one as was returned under answer No. 42; Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151; Sproles v. Rosen, Tex.Civ.App., 47 S.W.2d 331; Peeler v. Smith, Tex.Civ.App., 18 S.W.2d 938, 939, affirmed Tex.Com.App., 29 S.W.2d 975; Howard v. Howard, Tex. Civ.App., 102 S.W.2d 473, writ refused.

Further considerations are that, under succeeding issues 43, the jury's answer that appellant, Gus Barrington, "failed to use such care as a person of ordinary prudence would have used under the same or similar circumstances in an emergency", furnishes proper support for the judgment rendered against them both, any way, especially since the jury—on a specific submission of that detail—further found that he was also guilty of so having discovered the appellee's peril, in time to have averted the collision by the use of ordinary care, but had done nothing to avoid running him down. Aranda v. Texas & N. O. R. Co., Tex.Civ.App., 140 S.W.2d 236, writ dismissed, judgment correct; Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; 14 Texas Law Review, 538, n. 13; Rule 279 (last paragraph) Texas Rules of Civil Procedure; Hooks v. Orton, Tex. Civ.App., 30 S.W.2d 681; Younger Bros. v. Ross, Tex.Civ.App., 151 S.W.2d 621, writ dismissed; 30 Tex.Jur., Sec. 40, p. 690; 6 A.L.R. 680 (Annotation: "Emergency Rule" as applied to automobile drivers); 27 A.L.R. 1197; 79 A.L.R. 1277; 111 A.L.R. 1019; 5 Am.Jur. 1020, Sec. 171.

■ The admission of appellee's testimony, that he knew his compensation insurance company would be reimbursed for

whatever compensation it had paid him, which had been elicited on a re-direct examination of himself, is not thought to have entailed prejudicial error, for these among other considerations:

The fact had been declared for the first time by the appellants in their amended answer to appellee's suit, that he had been paid such compensation benefits; in answer thereto, by supplemental petition, he himself had declared this: " * * * The Texas Employers' Insurance Association as a matter of law will be reimbursed for the small sum which it has paid him before he recovers anything; that said Texas Employers' Insurance Association has indicated its intention to file a plea of intervention in this cause, in which it will undertake and is entitled to recover out of the plaintiff's judgment the sum which it has paid to him by way of settlement of his claim." Appellants filed no exceptions to that allegation.

Thereafter, the Insurance Association did file its plea of intervention, setting out the amount it had so paid the appellee, declaring its right under the law to be reimbursed for it out of any recovery the appellee might obtain from the appellants in the suit, and praying for such a reimbursement to itself. Appellants therefore must have known, independently of the appellee's testimony, that his compensation-insurer would be so reimbursed.

Furthermore, this complained-of statement on this feature came out on re-direct examination of the appellee, after appellants' counsel had cross-examined him at length as to his knowledge of his rights under the compensation law, he having, on direct examination by his own counsel, testified that he had been paid such compensation, to which disclosures appellants made no objection; McCormick & Ray, "Texas Law of Evidence", Sec. 282, page 371; Section 6a of Art. 8307, Vernon's Ann.Civ. St.

■ New Rule 327, Texas Rules of Civil Procedure, changes the pre-existing situation in that respect by imposing the burden on the complaining party to show probability of injury from alleged misconduct on the jury's part, like the mere mention in the jury room that one of the parties to the cause carries insurance, Texas Bar Journal, Vol. 5, Page 170, bottom column 2, presumably, from a review of the statement of facts upon the hearing for a new trial on that ground in this instance, wherein four of the jurors who returned the verdict were closely examined, it appears to the satisfaction of the trial court that there was no discussion as to whether or not these appellants carried insurance, there being at most a mere mention of this matter, which was followed by a prompt rebuke from two of the jurors; further, that the appellants failed, in any event, to show the probability of any injury to themselves from the fact that one or more jurors did simply mention the probability that appellants carried insurance, the subject not having been gone into nor discussed at all, and not further referred to, after the one or more jurors had been rebuked for mentioning it. The action of the trial court, after such a full hearing, in overruling the motion, carries with it the implied finding, at least, that nothing more occurred and that no injury was shown to have resulted to the appellants therefrom; 31 Tex.Jur., 166 Sec. 154; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770; St. Louis, B. & M. R. Co. v. Cole, Tex. Com.App., 14 S.W.2d 1024; Boddeker v. Olschewske, 127 Tex. 598, 94 S.W.2d 730; Mecom v. DeBlanc, Tex.Civ.App., 140 S. W.2d 915; Yellow Cab Co. v. Word, Tex. Civ.App., 125 S.W.2d 1050; Crim v. Hunter, Tex.Civ.App., 97 S.W.2d 979; Blue Diamond Motor Bus Co. v. Hale, Tex.Civ. App., 69 S.W.2d 228, writ dismissed; Russell v. Adams, Tex.Civ.App., 18 S.W.2d 189; Debes v. Greenstone, Tex.Civ.App., 260 S.W. 211.

Upon like considerations, it is held that no one of the challenged arguments involved prejudicial injury.

In the first place, the bills of exception in each of these instances were qualified by the trial court with this finding and conclusion: "This bill of exception was approved by the trial court, with the qualification that the court is of the opinion that the argument made and complained of was proper and supported by the evidence, or was provoked by argument of opposing counsel, or was in reply thereto."

■ Appellee's counsel's statement that the Insurance Association was "playing second fiddle", etc., as quoted supra, was thus found by the trial court to have followed and been induced by detailed charges made by appellants' counsel in his address to the jury, to the effect that appellee's counsel had not been really in court repre-

senting the appellee Duncan, but that they were there, in effect, to pull the chestnuts of the Insurance Association out of the fire, in which, among other things, he said: "There is a deliberate effort here to make you believe that Mr. Larry Morris and the firm of Sewell, Taylor, Morris & Connally represent this young man, Mr. Duncan, in this lawsuit; in other words, that it is his lawsuit, and that they have no connection with the Texas Employers' Insurance Association * * *."

Likewise, appellee's counsel's suggestion to the jury that the driver of appellants' truck might have been drunk on the occasion of the collision, was evidently, in the trial court's opinion, elicited by a discussion at great length on their part as to the nature of the evidence before the court upon this subject. It is held, after a perusal of the statement of facts, that the evidence was amply sufficient to have supported such a finding upon the trial court's part.

As concerns the same counsel's having told the jury that issues 19 to 40 were designed to elicit whether or not the appellee should be held responsible for the accident, it undisputedly appears that that argument was withdrawn, and the court instructed the jury not to consider it for any purpose. Wherefore, it may not be longer regarded as a proper predicate for injuries; Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304; Miller v. Wyrick, Tex.Civ.App., 96 S.W. 2d 253; Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Pegues v. Dilworth, Tex.Civ.App., 104 S. W.2d 558, affirmed 134 Tex. 169, 132 S.W. 2d 582.

The last challenged argument of appellee's counsel does not appear to have been improper, as the trial court held, but rather an oratorical flight only in favor of his client, which did not seem to have either departed from the facts, or to have inflicted any injury upon the appellants. Such arguments have not been condemned by our appellate courts; Wells v. Henderson, Tex. Civ.App., 78 S.W.2d 683; Rule 434, Texas Rules of Civil Procedure.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require an affirmance of the judgment; it will be so ordered.

Affirmed.